ELISHA RUCKMAN, PLAINTIFF IN ERROR, v. STEPHEN B. RANSOM, DEFENDANT IN ERROR.

1. An arbitrator need not be sworn before a justice of the peace; his oath, if taken before a master in chancery, is valid.
2. It is not necessary that the arbitrator should be sworn before fixing the time and place of his sitting.
3. Where the award upon its face appears to be within the submission, it is not competent, in a suit at law on the award, to show by parol that the arbitrator exceeded his authority.
4. The case of *Hoagland* v. *Veghte,* 3 *Zab.* 92, affirmed and followed.

On writ of error to Supreme Court.

The facts of the case are fully shown in the opinion of the court.

For plaintiff, *J. Dixon* and *A. B. Woodruff.*

For defendant, *J. F. Magee* and *J. G. Shipman.*

Ruckman v. Ransom.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This was a suit on an award, and the case comes before this court on bills of exceptions, taken at the Circuit, accompanying the writ of error.

I will notice, briefly, *seriatim*, the various exceptions to the legality of these proceedings urged on the argument before this court. First, it was said · that the oath of the arbitrator was not legal. The arbitrator was sworn before a master in chancery, and it is insisted that, by the arbitration act, (*Nix: Dig.* 30, §§ 4 and 6,\*) the oath must be administered by a justice of the peace.

If this were the only act affecting this question, there would be prevailing force in the objection. But such is not the case, and a mere statement of the sequence of the laws on this subject appears to explode this exception. The original arbitration act was passed in 1794. *R. L.* 158. It was the same, in all respects, as our present act, with the exception of the addition of the present last section, which relates to the mode of subpœnaing witnesses. The requirement that the arbitrators should be sworn, and that such oath should be administered by a justice, existed in this ancient law, as in the law now in force. This being the condition of this statute, in the year 1839 (*Nix. Dig.* 629†), the act relating to oaths and affidavits came into existence, and it provided that all oaths called for by any statute in this state, might be taken before certain enumerated officers, among whom were masters in chancery; so that, by force of this latter law, such an oath as has been taken by the present arbitrator was valid. This was not denied on the argument, but it was insisted that when, at the time of the last general revision of the statutes in 1846, this act relating to arbitrations was re-enacted, the act of 1839, so far as it relates to this class of officers, was thereby repealed. But this position cannot be yielded. There are no express words of repealer in the re-enacted law, and it is· the familiar legal doctrine that an inferential repeal of a statute is a pure question of intention, and that every reasonable intendment will be made against such result. Such destroying effect will be deemed to reside in the more

\**Rev.*, p. 35.    †*Rev*, p. 740.

recent statute only when it is absolutely irreconcilable with the prior one. Mr. Sedgwick thus states the doctrine of the judicial decisions: "It is, therefore, but reasonable to conclude, that the legislature, in passing a statute, did not intend to interfere with, or abrogate any prior law relating to the same matter, unless the repugnancy between the two is irreconcilable; and hence a repeal by implication is not favored; on the contrary, courts are bound to uphold the prior law, if the two acts may well subsist together." *Sedg. Stat. and Con. L.* 127. In the present instance there is, obviously, no repugnancy. The original act authorizes the oath of the arbitrators to be taken before a particular officer; the act of 1839 extends the authority to a class of officers; here is not even an incongruity; full effect can be given to both provisions. Upon the ground of general principles, therefore, there is nothing in the objection.

But before leaving the subject, it is proper to say that it would require an implication irresistibly cogent, to induce me to conclude, in any case, that any act in the revision of 1845 was intended to operate, inferentially, as a repealer. The foundation of this opinion is this: the revisors themselves have, with evident care, drawn a repealing act, specifying the acts intended to be repealed; and, in addition to this, it is obvious that, in many cases, the re-enactment of an old statute is the result merely of a purpose to condense. The act now under consideration is an apt illustration of the propriety of this remark, for the only apparent reason for its re-enactment appears to have been in consequence of the incorporation into it of the clause which now forms the last section, and which, before then, had stood as a supplement. Clearly this re-enactment was for the sole purpose of condensation. The suggested doctrine that such re-enactments should operate as repealing acts by implication, would throw the whole body of our statute law into the utmost confusion.

This first objection cannot prevail.

The next exception which I will consider, relates to the

allegation that the arbitrator, before he was sworn, proceeded with the business of the arbitration.

These are the facts on this head. Before the arbitrator took the oath, application was made to him to state a time and place of meeting. This was done, and the plaintiff in error was duly notified. At the time and place so appointed, the arbitrator was sworn; and upon proof being made of the service of the notice of hearing on the plaintiff, proceeded to hear the defendant in error *ex parte.*

There is no pretence that the plaintiff did not receive a reasonable notice of the sitting of the arbitrator. The objection is an the technical ground that when the arbitrator fixed the time and place of hearing, he had not been sworn. There was no authority referred to in support of this objection, and I have found none which seems to favor so severe a rule. Indeed, in one of the reported cases, Lord Hardwicke is made to say that express notice when they intend to meet, need not be given by the arbitrators, the parties being bound to take notice. *Tittenson* v. *Peat,* 3 *Atk.* 529. I understand from this, that the Chancellor thought that it was the duty of each of the parties to inquire of the arbitrator, and thus ascertain the time of his sitting. This, however, does not accord with the practice in such cases, and I have no doubt that an award made without due notice given to the parties would at the present day, be set aside. Still, however, the case seems to show that there is no settled technical rule upon the subject. I can see no reason for requiring that the notice shall proceed from the arbitrator after he has been sworn. The fixing a time and place for the hearing is not a judicial act. This is often the subject of agreement between the parties themselves. To pass upon the sufficiency of a notice of the meeting served upon a party, is a function of a judge; and this act, in the present case, was performed by the arbitrator after he had been legally qualified. This course is usual in practice, and seem to me unexceptionable.

Another exception was, that the judge did not leave the

question to the jury, whether the award had been rendered within a reasonable time.

The submission provided that the award should be ready to be delivered to the parties, or such one of them as should desire it, "by the first day of     next." The effect of this blank was, to leave the submission without the specification of any time within which the award was to be prepared. It was contended that, in the absence of any stipulation on the subject, the law raised the obligation to have the award ready within a reasonable time. The instruction of the judge at the trial did not specifically notice this point, which does not appear to have been raised; but the jury were, in general terms, directed to find for the plaintiff. It may well be doubted whether a question of this kind, which was not adverted to at the trial, can properly be made the subject of objection on this writ of error, under this general bill of exceptions to the charge. The proper course was for the counsel of the defendant, if he deemed the matter important, to request the judge to embrace it in his charge. In point of fact, there had been no unreasonable delay, and a verdict founded on such ground could not have been sustained. It did not appear that the plaintiff in error had taken any steps to expedite the proceedings, even by so slight an endeavor as to request the arbitrator to proceed. There could be no error, therefore, in the judge telling the jury that if they believed the evidence, the defence of unreasonable delay, if such defence were a legal one, had not been proved, and that they must find on that point for the plaintiff in the action. But, independently of these considerations, I do not think the ground of this objection is well laid. When the submission is silent as to the time when the award is to be ready for delivery, it is not the rule that the law will imply that it must be ready within a reasonable time. It is not like the case of a contracting party who is to do a certain act, no time being set for its performance. In view of such a stipulation, the reasonable presumption is, that the parties contracting at arm's-length, did not mean to confide to the one upon whom the burden of acting

was cast, the right to postpone performance until such performance might become convenient.   But an arbitrator is a judge of a party's own choosing, and it is a fair intendment, that in the absence of express instruction, the time of executing his duty is left to his discretion.   Besides, either party has it in his power to push the proceedings by a notice to the arbitrator, requiring him to act, under a penalty of a revocation of his authority.   The only pertinent case that I have found, fully sustains this view.   It is that of *Curtis* v. *Potts*, 3 *M. & S.* 146.   In this case the defendant pleaded that the award was not made in reasonable time, the submission being silent on the subject.   Lord Ellenborough held on demurrer to the plea, the other judges concurring, that there was, from such a submission, no implication that the award was to be made within a reasonable time.

This objection is not tenable.

The next point discussed on the argument was the question whether it was competent for the defendant to show as a defence, that the arbitrator, in making the award sued on, had exceeded his jurisdiction.   The allegation was, that the award embraced certain matters which had occurred after the submission, and which were not, therefore, within his authority. This excess did not appear on the award itself, and the offer was to show it by parol evidence.   The overruling of this evidence gave rise to this exception.

The general rule, on all sides admitted, is, that neither the fraud, misconduct, or mistake of the arbitrator can be set up at law in an action on the award, or on the bond of submission, unless such vice or defect appear upon the face of this award or submission.   I think, also, it must be considered settled, that the generality of this rule is subject to one exception, which is, that the award may be contradicted by parol, in order to show that the arbitrators neglected or refused to take into consideration a matter submitted to them.   This qualification of the general principle was declared to exist, and was acted upon by the Supreme Court in *Harker* v. *Hough*, 2 *Halst.* 428, which was an action on an arbitration

bond, the plea being that the arbitrators refused to hear a certain claim which was averred to be within the submission. This plea was demurred to, the ground taken in support of it being, that the defendant could not plead in avoidance of the award, a matter *dehors* the award; but the judgment was in favor of the plea. This decision occured in 1802, and ten years later, the judgment in *Mitchell* v. *Staveley*, 16 *East* 58, was rendered in the King's Bench, and which has been generally considered as introducing the same doctrine in the English law. This latter case was referred to, with apparent satisfaction, by Chief Justice Ewing, in *Shannon* v. *Wood*, 5 *Halst.* 7. The reason, or *ratio decidendi*, of these cases introductive of this class of exceptions, is stated to be, that an award, unless it is a finality, is a nullity, and whether this reason be satisfactory or not, seems, at this late day, to be of no importance. The principle that proof, extrinsic of the submission and award, serving to show that a matter submitted and presented, was not decided by the arbitrators, is admissible, must now be considered as completely established. The only question is, whether there are any other relaxations of the general principle which excludes evidence inconsistent with the award, that will embrace the offer overruled on this occasion.

It cannot be disputed, that in the case of *Hoagland* v. *Veghte*, 3 *Zab.* 92, this inquiry received a negative response from the Supreme Court of this state. The decision is a strong one in favor of a most rigorous enforcement of the rule giving an absolute conclusiveness to awards when sued on in the courts of common law. The offer was to show that the award in suit comprised certain damages which had been embraced in a prior award, and that such damages were not within the submission. The case of the defendant was a hard one, as the effect of the overruling of this fact was to make him pay twice for the same damage. But the court declared the evidence to be inadmissible, for the reason that excess of jurisdiction, in contradiction of the arbitration papers, could not be shown. As it is undeniable that this adjudication is,

in all respects, in point, the present asking is to overrule it. This decision has been the guide in practice for over twenty years.   The question involved was evidently considered by the court with care, and the results attained have the weighty sanction of Chief Justice Green.   Such a determination cannot, without obvious impropriety, be set aside by this court, unless it can be demonstrated to be in opposition to the most authoritative judgments.   I have examined with attention the cases to which we were directed by the counsel of the defendant, and not one of them, in my judgment, stands in hostility to this decision.   Since the argument, several members of this court have taken pains to look into the ancient cases, for it is upon them that our decision must be placed ; and the result of such research is the conclusion that the doctrine of the case just referred to is in the strictest harmony with the law and with the authorities, as they existed at the time that decision was rendered.   The following are among the authorities thus examined :   *Wills* v. *McCormick*, 2 *Wils.* 148 ; *Braddick* v. *Thompson*, 8 *East* 344 ; *Veale* v. *Warner*, 1 *Saund.* 327 and notes ; 1 *Bac. Abridgt.* 239, *k ; Ib.* 241 ; *Viner's Abridgt., Vol. III.*, 117, § 21 ; *Supplmt., Vol. I., p.* 295, § 8 ; *Comyn's Digest, Vol. II., p.* 109.

It will be found that these references all tend to the conclusion that the rule is universal, with the exception already specified, that the mistake or misconduct of the arbitrator cannot be shown, except in a direct proceeding' to set aside the award.   Unless a stipulation to make the submission a rule of court is contained in the submission, the remedy for a usurpation of jurisdiction, as well as for fraud or other misbehavior, is in a court of equity.   This is the rule, as stated in the most approved text-books.   *Cald. on Arb.* 201 ; *Russ. on Arb.* 510 ; 2 *Greenl. Ev.*, § 78.

It will be observed that the rule in question has its origin in the fact that arbitrators are judges of the parties' own selection ; that an award partakes of the nature of a judgment ; and in the circumstance of the inconvenience that would ensue

if the matters submitted could be opened to a jury on an investigation into the supposed faults or errors of these officers. An excess of jurisdiction must proceed from the fraud or mistake of the arbitrators, for, of necessity, they must determine as to the extent of their own authority, and, consequently, there appears to be no more reason why it should be competent in a suit at law, to show an overstepping of their authority, than it would be to show other instances of misconduct arising from the same causes. That these frauds and errors can be relieved against or corrected is, of course, not questioned, the inquiry being merely as to the forum in which the remedy should be sought. The case of *Hoagland* v. *Veghte* maintains that such forum is not a court of common law, but is a court of equity, and, in my opinion, this doctrine is conformable to the line of common law authorities.

Since the argument in this case, my attention has been directed to several recent decisions in the English courts, in which this rule of law is differently stated. Prominent among these is the case of *Duke of Buccleugh* v. *The Metropolitan Board of Works, L. R., 5 Excheq.* 229. But I do not regard this series of cases as being in point, as they arose on awards made under statutory compulsion—a condition which would seem to impart to them rather the characteristics of special tribunals, whose authority, at every step, must be affirmatively shown, than those of a common law arbitration, in favor of which every reasonable implication is due. It is upon this ground that the decisions in these cases appear to me to be correct, but I am not able to assent to the general reasoning through which such results have, in some instances, been reached.

My conclusion is that the judge was right in overruling, at the trial of the present case, all evidence tending to show that the arbitrator had gone beyond the sphere of his authority.

As to the various other topics embraced in the argument, I deem it sufficient to say that they have not been overlooked,

Cuff's Administrators v. Newark and New York Railroad.

but that, after consideration, none of them appear to show any error in this judgment, and the consequence is that I think it should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DALRIMPLE, DEPUE, SCUDDER, VAN SYCKEL, WOODHULL, CLEMENT, KENNEDY, LATHROP, OGDEN, OLDEN—12.

*For reversal*—None.

CITED *in State* v. *Anderson*, 11 *Vr.* 226.