MARTIN E. KEFFER, RELATOR, v. EDMUND C. GASKILL, JR., RESPONDENT.

Argued February 17 and June 14, 1915—Decided October 5, 1915.

1. Chapter 353 of the laws of 1915, intended to validate the election of certain municipal officers, is unconstitutional as being a special act regulating the internal affairs of cities.
2. The adoption by Atlantic City of the Walsh act (*Pamph. L.* 1911, *p.* 462), and the organization of the city commission, did not abolish the charter office of recorder previously existing.
3. The appointment of relator as recorder by the commission was for the charter term of three years, dating from such appointment.

On *quo warranto.* Demurrer to plea.

Before Justices SWAYZE, PARKER and KALISCH.

For the relator, *Clarence L. Cole.*

For the respondent, *Theodore W. Schimpf.*

The opinion of the court was delivered by

PARKER, J. The controversy is over the office of recorder of Atlantic City, and involves the Charter act of that city (*Pamph. L.* 1902, *p.* 284; *Comp. Stat., p.* 1125); the so-called "Walsh act" (*Pamph. L.* 1911, *p.* 462), adopted by popular vote in Atlantic City; and a still later act, passed after this litigation began, chapter 353 of the laws of 1915, passed April 20th, 1915, and which, if a valid act, would render unnecessary a decision of this cause as originally argued. The question of its validity was brought into the case by consent of the parties and this led to the second argument at the June term, 1915. We proceed first to ascertain whether the objection to its constitutionality is well taken. It is that the act is a special law regulating the internal affairs of towns and counties; special in that it creates an illegal class of cities to which its operation is confined. A

reading of the title discloses that this is so. The title is too long to quote; abridged, it is an act to validate any election heretofore held to fill the offices of recorder, &c., pursuant to a call therefor, in any city governed by the Charter act of 1902 which has adopted the Walsh act of 1911, and to confirm in their offices all persons elected to the office of recorder, &c., pursuant to the act of 1902, and the Election act of 1898 and supplements.

We are quite unable to see why, for the purposes of a so-called general act affecting cities, a questionable election to municipal office should be confirmed only in such cities governed by the act of 1902 as have adopted the Walsh act, or to put it in the other way, only in such Walsh act cities as had previously been governed by the Charter act of 1902. In either aspect the legislature has selected a purely artificial class of cities for its regulation. In fact the restriction goes further and limits the act to cities where elections have been held pursuant to the act of 1902 and the Election act. We are clear that no valid class was created, and hence the act of 1915 must fail.

This brings us to the original question raised, viz., whether relator or respondent was entitled to hold the office of recorder at the time of filing the information. It is conceded that respondent occupied such an office at that time, so that if relator was entitled to the same office the usurpation is plain.

Prior to its adoption of the Walsh act, Atlantic City was governed by the Charter act of 1902, *supra*. This provided by section 2 for a recorder, to be elected for a term of three years, on the general election day in November. Relator, Keffer, was elected recorder in 1911 for a term which would expire December 31st, 1914, subject of course to any change constitutionally enacted by the legislature. The Walsh act of 1911 was such a change, upon its adoption in Atlantic City by popular vote in 1912. Upon the organizing of the commissioners provided by that act, the city council, as a governing body, was "abolished, and the terms of all councilmen, and all other officers whether elective or appointive"

did "immediately cease and determine." (Section 2.) There is a proviso not here applicable and so not quoted. Relator was thus legislated out of office as recorder, and if the matter had stopped there, would have no standing. But the Walsh act further says, in section 4, amended *Pamph. L.* 1913, *pp.* 836, 838, "the board * . * * shall * * * create such subordinate boards and appoint such officers as it shall deem necessary for the proper conduct of the affairs of the city." This it proceeded to do. It undertook to do more, *i. e.*, apparently on the assumption that the office of recorder was abolished by the adoption of the act, the board passed a resolution that it deemed a recorder, among other officers, necessary for the proper conduct of the city's affairs, and having as it supposed revived the office, on July 23d, 1912, appointed relator, Keffer, to fill it.

We consider that the "revival" of the office was nugatory, because it had never been abolished. In *Salter* v. *Burk,* 83 *N. J. L.* 152, 156, it was held that the Walsh act did not alter general laws or charter provisions relating to the government of the city except when inconsistent with its provisions; but imposed on the commissioners the duty of filling existing charter offices made vacant by the adoption of the act and the organization of the commissioners, and that such new appointments must be for the charter term. It is true that in the later case of *Morris* v. *Fagan,* 85 *Id.* 617, the Court of Errors and Appeals held that the office of "city clerk" to which the commissioners had appointed Fagan, was not the same office as the charter office of city clerk claimed by Morris. But that case related to an administrative office created by and subordinate to the commission, and we do not consider that the decision affects or was intended to affect a judicial office created, and whose powers and duties are prescribed by the charter statute. The particularity with which they are prescribed will appear by a reading of sections 110 to 114 inclusive. *Pamph. L.* 1902, *p.* 337 *et seq.* As a question of construction of the Walsh act, therefore, we hold that the office of recorder of Atlantic City was not abolished by the organizing of the commissioners and could not be abolished

by any action of theirs; and it follows that when they appointed Keffer recorder on July 23d, 1912, they appointed him to the same office that he had previously held by election, and for the term prescribed by the charter. *Salter* v. *Burk, supra.*

It remains to determine what that term was. The following provisions of the charter are pertinent:

"Sec. 2. The term of office of such officers  * * *   shall be three years.

"Sec. 3. The term of office of all officers elected by the people (the recorder was one) shall except as hereinafter provided, commence on January 1st next ensuing their election at noon.

"Sec. 5. In case of a vacancy by death, resignation, &c., or from any other cause  * * *   in any elective city or ward office except mayor or councilman, the said council shall fill the same by appointment  * * *   until the next city election and until the election and qualification of successors."

By the same section vacancies in appointive offices are to be filled for the unexpired term; and it is argued for respondent that this clause applies, but we cannot accede to this claim. The appointive offices intended are those so designated in the charter, of which the office of recorder is not one. And the fact that the Walsh act made it appointive does not, in our estimation, bring it under this provision for filling charter appointive offices for an unexpired term. And when we recur to the language of the Walsh act, that on the organization of the commission, the "term of all officers, elective or appointive, shall immediately cease and determine," it seems plain that the legislature intended to do away with all questions of unexpired terms and let the commission start afresh. Hence the provisions of section 3 relating to commencement of the terms became inapplicable, and those of section 5 as to vacancies occurring during the term must be held as not applying to a vacancy created by adoption of the Walsh act. It then follows, that as we hold the provision for a three-year term remained in force, and the term began with the

appointment by the commission, Keffer was entitled to hold his office until July 23d, 1915, three years from his appointment, and the subsequent "election" of a recorder and action by the commission in recognition of the successful candidate Gaskill, were an illegal interference with his tenure.

Keffer's term has expired, but as it was running when this proceeding was begun, he is entitled to judgment of ouster. *Hammer* v. *State,* 44 *N. J. L.* 667, 671.