## GEORGE W. PERRY, RELATOR, v. OVIDIO C. BIANCHI, RESPONDENT.

Argued February 15, 1921—Decided June 7, 1921.

1. The adoption by the city of Orange of the provisions of the Walsh act (*Pamph. L.* 1911, *p.* 462), and the organization of the board of commissioners, did not abolish the office of police justice created by the charter of Orange.
2. The adoption of the Walsh act by Orange, and the organization of the commission, terminated the term of the then police justice and transferred the power of appointment from the governor to the commission.
3. The office of police justice of the city of Orange is not a state office but a municipal office.
4. The appointment of the relator as police justice of Orange by the governor after the adoption of the Walsh act by Orange and the organization of the city commission was illegal and void, and the relator obtained no title to the said office by virtue of said appointment.
5. The respondent who was appointed police justice of Orange by the commission of Orange and by the mayor on April 27th, 1920, for a term of five years is entitled to said office.

---

On *quo warranto,* demurrer to plea.

Before GUMMERE, CHIEF JUSTICE, and Justices BERGEN and KATZENBACH.

For the relator, *Howe & Davis.*

For the respondent, *Lindabury, Depue & Faulks.*

The opinion of the court was delivered by

KATZENBACH, J.   This case is before us upon a demurrer to a plea filed in an information in *quo warranto* proceedings. The information alleges that the respondent has, since April 28th, 1920, unlawfully held, used and executed the office of police justice of the city of Orange, and that the relator, who

was duly appointed for a term of five years, from May 1st, 1919, by the then governor, is entitled to the said office. The plea of the respondent alleges the adoption by Orange of the provisions of the act known as the Walsh act, and that upon the organization of the board of commissioners the term of the then police justice ended; that the board failed to appoint a police justice until April 27th, 1920, when the respondent was appointed; that the respondent was appointed both by the board and the mayor as head of the department of public affairs for a term of five years; that the respondent qualified and is discharging the duties of police justice. To this plea a demurrer was entered, and the sole question presented for consideration is whether the relator who claims appointment by the governor or the respondent who claims under appointment by the board of commissioners is entitled to the office of police justice of Orange.

The act entitled "An act to revise and amend the charter of the town of Orange," was approved March 3d, 1869, and its provisions extended to "the city of Orange" by the supplement of 1872, approved April 3d, 1872.

Paragraph 32, title fourth of that charter, reads as follows:

"And be it enacted, That the governor of this state shall, from time to time, appoint some fit and discreet person to be the police justice of the said town; who shall hold his office for the like term, and be commissioned in the like manner, and be entitled to the like fees for like services as justices of the peace, in and for the several counties of this state, and who shall be amenable in like manner to the senate and general assembly of this state."

Section 2 of the Walsh act provides as follows:

"Upon the organizing of the commissioners in any such city elected under this act, the city council or other governing body. or bodies theretofore acting as governing body or bodies in such city and having any other functions, shall be *ipso facto* abolished and the terms of all councilmen or aldermen, and all other officers, whether elective or appointive, shall immediately cease and determine."

Section 4 of the act provides as follows:

"The board of commissioners shall have and possess all administrative, judicial and legislative powers and duties now had and possessed and exercised by the mayor and city council and all other executive or legislative bodies in said city, and have complete control over the affairs of the city adopting the provisions of this act."

Section 4 also contains the following provision:

"The board of commissioners shall at the first meeting, or as soon as may be after organization, create such subordinate boards and appoint such officers as it may deem necessary for the proper and efficient conduct of the affairs of the city."

It was held, in *Salter* v. *Burk*, 83 *N. J. L.* 152, that these provisions entrusted the management of municipal affairs to the board of commissioners, but left the mechanism of the city government and the provisions of the charter untouched, and that the duty was imposed upon the board of commissioners to fill offices made vacant by the adoption of the act and the organization of the board. The result, therefore, in the city of Orange, upon the adoption of commission government, was to terminate the term of the police justice appointed by the governor. The office was not abolished by the change in the form of local government and at any time the board of commissioners had the power to appoint a police justice. We think the precise question in this case was raised and disposed of in the case of *Keffer* v. *Gaskill,* 88 *Id.* 77, which involved the title to the office of recorder in Atlantic City. The office of recorder was established by the act of 1902, which provided at the general election the legal voters of the city should elect a recorder for the term of three years. The relator, in this case, was appointed to the office of recorder by the board of commissioners and the respondent was elected to the office by the legal voters and by virtue of such election claimed title. This court, through Mr. Justice Parker, held that the term of recorder ended upon the organization of the board, and that the relator by virtue of his appointment by the board which had the power to fill the office was entitled thereto and that the election conferred no title to the office upon the respondent. A comparison of the section

of the Orange charter with the section of act defining the jurisdiction of the recorder of Atlantic City discloses that the jurisdiction of the two courts is identical and their relation to the government of the respective cities similar.

In the present case, the counsel for the relator contends that the appointment of police justice was not an executive, legislative or judicial power of the mayor, city council or other executive or legislative body in Orange, and that for this reason the power to appoint was not granted to the board of commissioners. The fault with this argument lies not in the premise but the conclusion. The Walsh act does not confine the power of the commissioners to the executive, legislative and judicial power formerly exercised by the mayor, city council and officers, but, in addition to such power, the board is given complete control over the affairs of the city. In the case of the recorder of Atlantic City, the power of appointment was one which was not an executive, legislative or judicial power conferred upon the mayor, city council or other officer, but was a power vested in the people by statute, yet this court held that this power by the Walsh act was taken from the people and vested in the board of commissioners.

This being so, we cannot see why, upon the same reasoning, the Walsh act did not take the power of appointment of a recorder for Orange from the governor and vest it in the board of commissioners upon the election and organization of such a board.

It is further contended for the relator that the office of police justice, as created by the special charter of Orange, is a "public or state" office, and not a municipal office, and that, therefore, the Walsh act has no application. The office of police justice or judge of a police court has always been regarded as municipal office. 2 *Dill. Mun. Corp.* (5th ed.), § 740. In the case of *State* v. *Churchman* (*Del.*), 51 *Atl. Rep.* 49, the Supreme Court held that a judge of the Wilmington city court appointed by the governor was a municipal officer and not a state officer requiring confirmation by the senate. The proceedings in this case were commenced upon the theory that the police justice of Orange was a municipal officer, as

the information was filed by the relator under section 4 of the act entitled "An act in relation to informations in the nature of *quo warranto*" (*Rev.* 1903), which authorized any person who believes himself lawfully entitled to a municipal office to file an information in the nature of a *quo warranto* against any person occupying such office without first securing leave of the Supreme Court, as is required where the office is a state office or the relator does not claim title thereto. No such leave was obtained in this case, so, if the office is assumed by the relator to be a state office, the information is defective and judgment would upon the demurrer be entered against the relator.

Judgment will be entered for the respondent.