SIDNEY STARK, RELATOR, v. SCOTT M. FELL AND FRED L. NITZ, DEFENDANTS.

Submitted January 16, 1940—Decided April 30, 1940.

Before Brogan, Chief Justice, and Justices Donges and Porter.

For the relator, *William H. Geraghty.*

For the defendants, *Louis Josephson.*

The opinion of the court was delivered by

Porter, J.  The question raised by the pleadings in this case is by what warrant the defendants claim to hold and to have the right to exercise the offices of commissioners of the Housing Authority of the city of Trenton.  The relator sues out the writ as a citizen and taxpayer.

The facts are not disputed.  By vote of the people the form of government of Trenton was changed on April 11th, 1939, from the "municipal manager" to the "commission form." There was an election subsequently held and a board of commissioners duly elected and qualified.  Thereafter, on July 27th, 1939, the Board of Commissioners appointed a new board of "Housing Authority" supplanting the board in existence when the change in government became effective. The names of such appointees and the terms of office for which appointed are as follows: David L. Kelsey, one year; Fred L. Nitz, defendant, two years; Scott M. Fell, defendant, three years; Peter A. Pulone, four years, and J. Conner French, five years.  All of these appointees duly qualified by taking the prescribed oath of office and have since performed the duties of their office, or at least the board has functioned by action of a majority of the members.  The majority have refused to recognize the said defendants, Messrs. Fell and Nitz, as members and have refused to allow them to vote or to perform other duties of their office.  It appears that the

three members constituting the said majority of the board were all members of the old board. Of the two other members of the board and who were not continued in office by appointment of the Board of Commissioners were Walter O. Lochner and James A. T. Gribben. Mr. Lochner resigned on August 15th, 1939. If the old board had ceased to exist or his term had expired with the change in government he was then not a member and his resignation was of no effect, otherwise, of course, it would be effective. In any event, his status is not now in question. In the case of Mr. Gribben, however, it is the claim of the relator that he is entitled to membership on the board and that neither of the defendants is.

It is the contention of the relator that the appointments of the new board, especially those who were not members of the old board, the defendants Messrs. Fell and Nitz, were illegal and contrary to law and that judgments of ouster should be entered against them; that the Housing Authority was created by Trenton in April, 1938, and that the governing board then in office (the municipal council and municipal manager form of government) on or about May 31st, 1938, appointed the first commissioners of the Housing Authority and they and their successors were in office when the change in the form of government became effective and when the new board was appointed by the Board of Commissioners on July 27th, 1939, aforesaid; that the old board was not abolished nor the terms of its members terminated by the change in the form of government because the statute creating the Housing Authority, *R. S.* 55:14-1 to 13, was paramount to, independent of and unaffected by any provision of the Walsh act, *R. S.* 40:70 *et seq.*, that moreover the Housing Authority statute was enacted subsequent to the Walsh act and if inconsistent therewith it being the last expression of legislative intent it will be presumed to control. It is further contended by the relator that this statute was independent of other statutes and self integrated; that it created the Housing Authority as a body corporate and politic with the power to sue and be sued, to have a seal and perpetual succession, to make contracts or other instruments and to make

rules and regulations for the conduct of its affairs. Further argument is that its bonds or other obligations are not, under the statute, the obligations of the municipality but are only payable out of its own funds or properties, therefore, it was not intended by the legislature that it was to be such an administrative body as would be a part of the municipal government and come within the scope and purview of the Walsh act.

We are unable to agree with those contentions. Our conclusion is that irrespective of the separate corporate entity of the Housing Authority and its powers to issue bonds and to otherwise act independently of the municipality that it is nonetheless engaged in a purely local municipal function. The very statute creating it, *R. S.* 55:14A, 4, as added by *Pamph. L.* 1938, *p.* 69, defines it in these words: "such authority shall constitute an agency and instrumentality of the municipality or county creating it."

The theory and clear legislative intent as expressed in the Walsh act, *R. S.* 40:71-9, was to establish with the commission a new and complete form and scope of the municipal government. By the adoption of that plan all powers were vested in the Board of Commissioners elected thereunder and all officers "whether elective or appointive, shall immediately cease and determine." The only exceptions are the boards of education, the District Courts, policemen, firemen, veterans, or officials or employes protected by any Tenure of Office act or Civil Service act if the municipality is operating under its provisions. The members of the Housing Authority clearly do not come within any of these expressed exceptions. In the absence of any legislation exempting the Housing Authority from the operation of the provisions of the Walsh act it seems clear that it comes within it and that the terms of the members expire with the advent of the new government. *Cf. Devlin* v. *Cooper,* 124 *N. J. L.* 155.

Nor do we think that there is merit in the contention of the relator that as certain inconsistencies exist between the provisions of the Housing Authority act and the Walsh act that the former should govern because it is the later expression of legislative intent. It is true that the Housing Author-

ity act does provide that its provisions shall govern over any inconsistent laws. That law, however, speaks from the date of its enactment whereas the Walsh act speaks from the date of "immediately after the election and organization of the commissioners" providing that laws inconsistent with it "shall be repealed and abrogated."

It seems to us, therefore, that the Walsh act governs over any inconsistent laws which existed at the time of the advent of the new government.

It follows that the action of the Board of Commissioners in the appointment of the new board of Housing Authority was proper and valid and that judgment be entered for the defendants, with costs.