THE BROADWAY NATIONAL BANK OF BAYONNE, A NA-
TIONAL BANKING INSTITUTION, PLAINTIFF-RESPOND-
ENT, v. THE PARKING AUTHORITY OF THE CITY OF
BAYONNE, AND VINCENT BURKE, FRANK CARPENTER,
SR., JACOB DROGIN, WALTER P. PAGUREK, ALAN F.
PAUL AND JAMES GARITO, ALAN KONIECZKO, SAMUEL
LEVIS AND CHESTER ZEBROWSKI, DEFENDANTS-AP-
PELLANTS.

VINCENT BURKE, FRANK CARPENTER, SR., JACOB DROGIN
AND WALTER PAGUREK, PLAINTIFFS-RESPONDENTS,
v. JAMES GARITO, ALAN KONIECZKO, SAMUEL LEVIS,
CHESTER ZEBROWSKI, ALLEGED COMMISSIONERS OF
THE PARKING AUTHORITY OF THE CITY OF BAYONNE;
FRANCIS G. FITZPATRICK, ALFRED DWORZANSKI,
WILLIAM MARTIN, JOSEPH LeFANTE, DENNIS COL-
LINS AND JOSEPH MAKOWSKI, MEMBERS OF THE
GOVERNING BODY OF THE CITY OF BAYONNE, DE-
FENDANTS-APPELLANTS.

Argued February 19, 1963—Decided May 20, 1963.

Mr. *Frank J. Ziobro* argued the cause for the defendants-appellants, Francis G. Fitzpatrick, Alfred Dworzanski, William Martin, Joseph LeFante, Dennis Collins and Joseph Makowski, members of the Governing Body of the City of Bayonne.

Mr. *James P. Dugan* argued the cause for the defendants-appellants, James Garito, Alan F. Paul, Alan Konieczko, Samuel Levis and Chester Zebrowski.

Mr. *Roy G. Simmons* argued the cause for the plaintiffs-respondents, Vincent Burke, Frank Carpenter, Sr., Jacob Drogin and Walter Pagurek. (*Messrs. Camp & Simmons,* attorneys).

The opinion of the court was delivered by

PROCTOR, J. The sole issue presented on this appeal is whether the terms of office of commissioners of a municipal parking authority, created by a municipality pursuant to the Parking Authority Law, *L.* 1948, *c.* 198, *N. J. S. A.* 40:11A–1 *et seq.,* terminate on the effective date of a new plan of government adopted by the municipality under the Optional Municipal Charter Law, *L.* 1950, *c.* 210, *N. J. S. A.* 40:69A–1 *et seq.* (Faulkner Act).

The facts are not in dispute. On December 17, 1958 the City of Bayonne, which was then governed by a board of commissioners under the Walsh Act, *R. S.* 40:70–1 *et seq.,* enacted an ordinance creating the Parking Authority of the City of Bayonne pursuant to the Parking Authority Law, *supra.* Messrs. Burke, Carpenter, Pagurek, Drogin and Paul were appointed as commissioners for staggered terms ranging from one to five years, respectively. Burke, Carpenter and Pagurek were subsequently reappointed for five-year terms pursuant to *N. J. S. A.* 40:11A–4, when their original terms expired.

On July 1, 1962 Mayor-Council Plan C, one of the optional plans of government under the Faulkner Act (*N. J. S. A.* 40:69A–55 to 60), became effective in the city pursuant to a referendum previously adopted. The new municipal council appointed Messrs. Garito, Konieczko, Paul, Levis and Zebrowski as commissioners of the Parking Authority on July 16, 1962. (Paul is thus a commissioner of the Parking Authority by appointment of both the former city administration and the present governing body.)

Burke, Carpenter, Pagurek and Drogin claimed that they had valid continuing terms as commissioners of the Parking Authority, notwithstanding the change in the form of government. On the other hand, Garito, Konieczko, Levis and Zebrowski contended that the terms of the previous commissioners ceased and determined by operation of *N. J. S. A.* 40:69A–207 on July 1, 1962, the effective date of the Faulkner Act in the city, and that they were the legal holders of the offices involved. Because of this dispute, the Broadway Na-

tional Bank of Bayonne was faced with opposing claims to funds deposited with it in the name of the Parking Authority. In order to protect itself against double liability, the bank brought an action in interpleader, joining the Parking Authority and all those claiming to be commissioners. Thereafter, Burke, Carpenter, Drogin and Pagurek brought an action in lieu of prerogative writs against Garito, Konieczko, Levis and Zebrowski and the Mayor and Council of the City of Bayonne, seeking a judgment enjoining those defendants from interfering with the plaintiffs' terms of office and determining who are the legal and authorized commissioners of the Parking Authority. At the time these actions were instituted, the Parking Authority had outstanding contractual obligations in the amount of $75,000.

The actions were consolidated with the consent of the parties, all of whom moved for judgment on the uncontroverted facts.

The trial court held that a parking authority is "a separate public entity operating independently of the municipality in which it is formed," and that N. J. S. A. 40:69A–207 "does not encompass offices in other political subdivisions or the officers filling them, even if their duties and functions are exclusively within such municipality." *Broadway Nat. etc., Bayonne v. Parking Auth. Bayonne,* 76 N. J. Super. 139, 147 (*Ch. Div.* 1962). The court therefore concluded:

"* * * that the offices of commissioners of the Parking Authority of the City of Bayonne were not abolished and the terms of the incumbent officers did not cease and determine upon the taking effect of the Faulkner Act on July 1, 1962 at noon. Vincent Burke, Frank Carpenter, Sr., Jacob Drogin, Walter Pagurek and Alan Paul continue to hold office as lawful commissioners of the Parking Authority of the City of Bayonne, and the Broadway National Bank of Bayonne is directed to honor their right and title to control the bank account standing to the credit of the Parking Authority of the City of Bayonne." *Id.,* at *p.* 148.

A judgment incorporating the above holding and granting the injunctive relief sought was thereafter entered.

The Mayor and Council of the city and Garito, Paul, Konieczko, Levis and Zebrowski appealed and we certified the matter while it was pending in the Appellate Division. Since no stay of the trial court's judgment was granted, the Broadway National Bank has elected not to file a brief on this appeal. Effectively, therefore, the only respondents are those parking authority commissioners who were appointed prior to the effective date of the Faulkner Act in the city.

Upon the taking effect of one of the optional plans of government under the Faulkner Act, the transition from the old form of government to the new is accomplished by *N. J. S. A.* 40:69A–207. That section provides:

"At 12 o'clock noon on the effective date of an optional plan adopted pursuant to this act, all offices then existing in such municipality shall be abolished and the terms of all elected and appointed officers shall immediately cease and determine; provided, that nothing in this section shall be construed to abolish the office or terminate the term of office of any member of the board of education, trustees of the free public library, commissioners of a local housing authority, municipal magistrates or of any official or employee now protected by any tenure of office law, or of any policeman, fireman, teacher, principal or school superintendent whether or not protected by a tenure of office law. If the municipality is operating under the provisions of Title 11 of the Revised Statutes (Civil Service) at the time of the adoption of an optional plan under this act, nothing herein contained shall affect the tenure of office of any person holding any position or office coming within the provisions of said Title 11 as it applies to said officers and employees. If the municipal clerk has, prior to the effective date of the optional plan, acquired a protected tenure of office pursuant to law, he shall become the first municipal clerk under the optional plan.

Provision for officers and for the organization and administration of the municipal government under the optional plan may be made by resolution pending the adoption of ordinances, but any such resolution shall expire not later than 30 days after the effective date of the optional plan."

On this appeal, the defendants-appellants (the "new" commissioners) contend that the part of section 207 which provides that upon the advent of the new government, "the terms of all elected and appointed officers shall immediately cease

and determine," includes the terms of commissioners of the Parking Authority. On the other hand, the plaintiffs-respondents (the "old" commissioners) contend that a parking authority is an autonomous body whose existence cannot be terminated except in accordance with the Parking Authority Law; that if it were to be determined that section 207 terminates the terms of office of parking authority commissioners, then the Authority itself "was *ipso facto* abolished, thus impairing and obliterating the rights of those who had previously contracted with said authority." They further contend that the above-quoted part of section 207 does not apply to parking authority commissioners, because certain amendments to the Parking Authority Law impliedly repealed the Faulkner Act with respect to parking authorities.

■■ Section 207 provides in part that "all offices *then existing in such municipality*" shall be abolished upon the taking effect of a Faulkner Act plan of government in a municipality. (Emphasis added) Though a parking authority is an "agency and instrumentality" of the municipality creating it (*N. J. S. A.* 40:11A–4), and is engaged in a municipal function, it is nevertheless a "public body corporate and politic and a political subdivision of the State." *N. J. S. A.* 40:11A–4, 6(1). Such authority is an independent entity distinct and separate from the municipality. *DeLorenzo v. City of Hackensack,* 9 *N. J.* 379, 389 (1952) ; *State v. Parking Authority of the City of Trenton,* 29 *N. J. Super.* 335, 338–339 (*App. Div.* 1954). It has broad powers derived from its enabling legislation, including the power to issue its own bonds and incur other obligations, to deal with the problem of alleviating traffic congestion by providing off-street parking facilities within its own territorial boundaries, which are co-terminous with those of the municipality. *N. J. S. A.* 40:11A–6, 8. Indeed, an authority has broader powers in some respects than the municipality which created it, *e. g.,* it is not bound by *Chapter* 50 of *Title* 40, which imposes restrictions upon the power of municipalities to enter into contracts. *N. J. S. A.* 40:11A–23(4). The autonomous nature of a

parking authority, as shown by the above, makes it clear that the Legislature, in enacting section 207 of the Faulkner Act, did not regard the offices of parking authority commissioners, which constitute the authority (see *Myers v. Cedar Grove Tp.*, 36 *N. J.* 51, 60 (1961)), as offices "then existing in such municipality" subject to being abolished upon the effective date of a new plan of government. Any other result would raise serious constitutional questions respecting the impairment of the authority's obligations to its bondholders and other creditors. See also, *N. J. S. A.* 40:11A–20, whereby the provisions of the Parking Authority Law constitute a part of all contracts entered into by an authority "for the benefit and security of the creditors of such authority," and the State has pledged to all bondholders that it "will not limit or alter the rights hereby vested in the authority and in the holders of such bonds" until those obligations are fully discharged.

However, the question remains whether the *terms of officers* (commissioners) of a parking authority come to an end upon the taking effect of the new plan of government, notwithstanding that the *offices* constituting the authority are not within section 207. That section does not stop with the abolishment of "all offices then existing in such municipality," but provides further that "the terms of all elected and appointed officers shall immediately cease and determine." The trial court held that the offices of parking authority commissioners could not be abolished, and that the effect of section 207 "cannot be split"; that "the term 'all officers' is and can be no broader than the term 'all offices'"; and that therefore the section does not encompass the ending of the terms of officers who filled offices which could not be abolished. 76 *N. J. Super.*, at *p.* 147. We think this construction of section 207 makes superfluous the clause, "*and* the terms of all elected and appointed officers shall immediately cease and determine." (Emphasis added) Whenever an office is abolished, the term of the holder of that office necessarily comes to an end, since there cannot be an officeholder without an office to fill. If the only legislative objective were to end the terms of those office-

holders who held an office which was abolished, it would have been unnecessary to add the last-quoted clause. Moreover, the proviso in section 207 states that nothing in the first part of the section "shall be construed to abolish the office *or* terminate the term of office" of specified bodies or persons. (Emphasis added) Thus, a reading of the statute shows a clear legislative intent that each of the clauses should have a distinct and separate meaning and that each was to achieve an independent goal in the transition to a new form of government.

One of the objectives of the Faulkner Act is to centralize maximum powers in the new government, giving it "the widest possible authority to determine the organization of departments." *Myers v. Cedar Grove Tp., supra,* at *p.* 57. To this end, section 207 provides that "all offices" existing in the municipality shall be abolished, in order that the newly formed government "should not be hampered in its organization by a variety of holdover boards, bodies and departments." *Ibid.* Another objective envisioned by section 207 of the Faulkner Act is to provide a "clean slate" of elected and appointed personnel (with specific exceptions) with whom the new government must work in close harmony in order to efficiently perform municipal functions. *Id.,* at *p.* 56.

The Parking Authority Law contemplates a close relationship between an authority and the municipality which creates it. *State v. Parking Authority of the City of Trenton, supra,* at *p.* 337; *cf. Kohler v. Cobb,* 31 *N. J.* 369, 374 (1960). Although an authority is a separate and independent entity, it is nevertheless an instrumentality of the municipality for the fulfillment of a local municipal function in the important field of traffic control. *Cf. DeVita v. Housing Authority of City of Paterson,* 17 *N. J.* 350, 360 (1955); *Camden County v. Pennsauken Sewerage Auth.,* 15 *N. J.* 456, 464–465 (1954). The Law authorizes the municipality to cooperate with the authority by donating or lending funds and granting or conveying real or personal property to it; by issuing municipal bonds and paying the proceeds to the authority; by uncondi-

tionally guaranteeing the payment of the authority's bonds; and by assisting the authority in many other ways to accomplish the purposes of the Law. *N. J. S. A.* 40 :11A–21 to 23. And as further indication of the rapport intended by the Law to exist between an authority and the municipality, the authority is empowered, with the consent of the municipality, "to acquire, take over or lease, or manage, any parking project or undertaking constructed or owned by such * * * municipality or any meters, equipment or other facilities of such * * * municipality devoted to the parking or storage of vehicles * * * or necessary or useful and convenient in connection therewith or with the promotion of the free movement of traffic * * *." *N. J. S. A.* 40 :11A–18. From the above it is clear the Legislature intended that the municipality and the commissioners of a parking authority would cooperate with each other in the fulfillment of the statutory aim of alleviating the serious problem of traffic congestion on the streets of the community. Therefore, even though the parking authority is an independent entity, it would hardly be conducive to good government or to the welfare of the municipality to have parking authority commissioners who are unfriendly toward, and in political opposition with, the newly-formed government. *Cf. Downey v. Bd. of Education of Jersey City,* 74 *N. J. Super.* 548, 554 (*App. Div.* 1962).

In order that the newly-created government have an opportunity to achieve a harmonious relationship among those who are to be charged with the fulfillment of local municipal functions upon the establishment of the new government, section 207 provides that "the terms of *all* elected and appointed officers" (without restriction to those whose offices are "existing in such municipality") immediately cease and determine. (Emphasis added) The commissioners of a parking authority fit the above description since they are appointed by the governing body of the municipality under the Parking Authority Law. *N. J. S. A.* 40 :11A–4. In view of the above, we think that this clause in section 207 was intended to terminate the terms of office of parking authority commissioners upon the

effective date of a new plan of government, notwithstanding that the offices constituting the authority are not abolished.

In cases construing the transitional provision of the Walsh Act, *N. J. S. A.* 40:71–9, which is substantially the same as *N. J. S. A.* 40:69A–207 of the Faulkner Act, a similar result was reached. *Keffer v. Gaskill*, 88 *N. J. L.* 77 (*Sup. Ct.* 1915); *Perry v. Bianchi*, 96 *N. J. L.* 113 (*Sup. Ct.* 1921); *Stark v. Fell*, 124 *N. J. L.* 475 (*Sup. Ct.* 1940). In *Keffer*, it was held that although the Legislature did not intend that the office of municipal recorder should be abolished by the above section of the Walsh Act, nevertheless the term of office of the recorder was terminated upon the organization of the commission, and that the commission's subsequent appointment of a recorder for a new term was valid. The court said, "[I]t seems plain that the Legislature intended to do away with all questions of unexpired terms and let the commission start afresh." *Id.,* at *p.* 80. The same result was reached in *Perry* upon similar facts. In *Stark,* the court upheld the appointment of new commissioners of a local housing authority on the ground that the terms of office of the old commissioners had terminated upon the effective date of the Walsh Act in the municipality, notwithstanding that the housing authority itself was not abolished. We think these cases manifest a legislative intent under the Walsh Act to end *all* terms of office, even though certain offices may not be destroyed. It seems clear that the Legislature wished to continue this policy in enacting the Faulkner Act. Compare *N. J. S. A.* 40:71–9 with *N. J. S. A.* 40:69A–207.

Our conclusion is buttressed by the language of the proviso in section 207, wherein the Legislature deemed it necessary to expressly except both the offices *and* the terms of office of the members of specific boards, bodies and classes of employees which it desired should remain unaffected by a change in the form of government. For example, section 207 would not abolish the offices of commissioners of a local housing authority for the same reasons set forth earlier in this opinion with respect to parking authorities, since it, too, is a separate and

independent corporate entity with power to issue its own bonds. *N. J. S. A.* 55:14A–7, 12. Hence, the legislative purpose in amending section 207 in 1954 (*L.* 1954, *c.* 69) to include the commissioners of a local housing authority in the proviso could not have been to save their *offices* from abolishment. Rather, the Legislature must have considered that, without the proviso, the commissioners of a housing authority would fall within the clause, "all elected and appointed officers," whose *terms* would come to an end upon the advent of a new form of government. On the other hand, the offices of trustees of the free public library, which are clearly part of the municipal government, *Glick v. Trustees of Free Public Library,* 2 *N. J.* 579, 583–584 (1949), would fall within the scope of "all offices then existing in such municipality" and would therefore be abolished. However, by the proviso to section 207, the Legislature saved both the offices and the terms of office of such trustees. There would be no need to expressly preserve the *terms* of office of such trustees if preservation of the *offices* were sufficient in itself to exempt those terms from the operation of section 207. Moreover, the preservation of the terms of office of commissioners of parking authorities is not within the listed exceptions in the proviso. If the Legislature had wished to save those commissioners' terms, it could readily have done so in the same manner as it saved the terms of housing authority commissioners. The failure to include the terms of parking authority commissioners indicates an intent that they should come to an end upon the effective date of a change in the form of government. See *Myers v. Cedar Grove Tp., supra,* at *p.* 59; *Stark v. Fell, supra,* at *p.* 478.

█ The plaintiffs contend that section 207 has been impliedly repealed with respect to parking authorities by *N. J. S. A.* 40:11A–23(4) and *N. J. S. A.* 40:11A–26, both of which were adopted subsequent to the last amendment of section 207. Even aside from the doctrine that repeals by implication are not favored, *Ruckman v. Ransom,* 35 *N. J. L.* 565, 567 (*E. & A.* 1871), we see no merit in these contentions. *N. J. S. A.* 40:11A–23(4) provides:

"A parking authority shall not be subject to, or constitute a municipality or agency or component of a municipality subject to, the provisions of chapter 50 or any other provisions of Title 40 of the Revised Statutes."

*N. J. S. A.* 40 :11A–26 provides :

"All general or special laws, or parts thereof, inconsistent herewith are hereby declared to be inapplicable to the exercise of the powers, duties and obligations authorized under the provisions of this act."

As to *N. J. S. A.* 40 :11A–23 (4), it is obvious that the Legislature did not intend to exempt parking authorities from *all* provisions of *Title* 40, since the Parking Authority Law itself is a part of *Title* 40. The above section was enacted in 1958 (*L.* 1958, *c.* 22) as part of an amendment to the Parking Authority Law. An examination of the entire amendment, and of the introductory statement accompanying the bill which was ultimately enacted, leads to the conclusion that this section was intended only to free the authority from those restrictions in *Title* 40 which would be imposed upon a municipality acting by itself in the construction and financing of parking projects. We find nothing in the amendment or in the statement which intimates in the slightest degree an intent to repeal section 207 of the Faulkner Act.

As to *N. J. S. A.* 40 :11A–26, which was enacted as a supplement to the Parking Authority Law in 1954 (*L.* 1954, *c.* 138), it is clear from an examination of that section, in the context of the other amendments and supplements contained in the same bill which was ultimately enacted, that section 26 was primarily intended to provide additional security for parking authority bond issues. The introductory statement concludes that the proposed enactment "in no way deprives the political subdivisions of any of their home rule attributes without their consent." We find no inconsistency between this section and the termination of the terms of office of parking authority commissioners pursuant to section 207 of the Faulkner Act.

■ For the foregoing reasons, we hold that upon the taking effect of the new plan of government in the city on July 1, 1962, the terms of the plaintiff-commissioners of the Parking Authority of the City of Bayonne immediately ceased and determined, and that upon appointment by the new governing body, the defendants, Messrs. Garito, Konieczko, Paul, Levis and Zebrowski, became the lawful commissioners of the Authority. It follows that the Broadway National Bank of Bayonne must honor the defendants-commissioners' right and title to control the bank account standing to the credit of the Parking Authority of the City of Bayonne.

The judgments of the trial court are reversed and the matters are remanded to it for the entry of judgments consistent with the above holding.

WEINTRAUB, C. J., and HANEMAN, J. (dissenting). The majority opinion holds that although the offices of commissioners of a municipal parking authority were not abolished by the adoption of a plan of government under the Optional Municipal Charter Law (Faulkner Act), *N. J. S. A.* 40 :69A–1 *et seq.,* nonetheless the terms of the commissioners did come to end. We agree the offices were not abolished, but cannot agree the incumbencies were terminated.

The critical provision of the Faulkner Act is *N. J. S. A.* 40 :69A–207 which reads :

"At 12 o'clock noon on the effective date of an optional plan adopted pursuant to this act, *all offices then existing in such municipality shall be abolished and the terms of all elected and appointed officers shall immediately cease and determine*; provided, that nothing in this section shall be construed *to abolish the office or terminate the term* of office of any member of the board of education, trustees of the free public library, commissioners of a local housing authority, municipal magistrates or of any official or employee now protected by any tenure of office law, or of any policeman, fireman, teacher, principal or school superintendent whether or not protected by a tenure of office law. If the municipality is operating under the provisions of Title 11 of the Revised Statutes (Civil Service) at the time of the adoption of an optional plan under this act, nothing herein contained shall affect the tenure of office of any person holding

any position or office coming within the provisions of said Title 11 as it applies to said officers and employees. If the municipal clerk has, prior to the effective date of the optional plan, acquired a protected tenure of office pursuant to law, he shall become the first municipal clerk under the optional plan." (Emphasis added)

We find nothing there to suggest that a term of office shall end notwithstanding the office itself survives. In the first italicized portion we find the phrase "all offices then existing in such municipality shall be abolished *and* the terms of all elected and appointed officers shall immediately cease and determine." We do not know why, after providing for the abolition of an office, the Legislature went to the trouble of adding that the term of the incumbent shall cease. We would think that if an office is abolished, the term of the holder necessarily ends. Perhaps for fear that a dislodged incumbent might claim the new office if it were the same as or very similar to the office the statute abolished, the draftsman spelled out the consequence of the abolition of the office, *i. e.,* the termination of the holder's incumbency. Whatever the reason, there is no evidence of an intent to end the term as to an office that is not destroyed.

In the proviso which follows the portion to which we just referred, we have the language that "nothing in this section shall be construed to abolish the office *or* terminate the term" of offices which are then enumerated. The use of "or" rather than "and" does not indicate an intent that as to some offices the term of the incumbent shall end while the office continues unscathed. We must remember that this is only a proviso and that in the enacting part from which the proviso carves out certain exclusions there is nothing which affirmatively states a purpose to end a term rather than both office and term, and nothing which intimates a test whereby it may be discovered in what instances the term shall go and the office remain. Nor does the proviso provide such a result with respect to any office to which it applies.

Since neither the enacting portion nor the proviso would thus separate term from office, it strikes us as strange to infer

the Legislature intended a severance merely because "or" rather than "and" was used in the proviso. It seems to us that the disjunctive was used merely because it is the usual mode of expression when the enacting part speaks of *two* things and the proviso wishes to protect against both. Here an awkwardness arises because the enacting part does not really deal with *two* distinct things. As we have said, the term of the incumbent necessarily ends with the abolition of the office, and hence the language relating to the termination of the incumbent's term was added, not to create a second consequence, but probably to avoid a dispute as to the full impact of the abolition of the office. But whatever a grammarian may think of the use of "or" in this setting, we cannot see how it can be a springboard for a thought nowhere expressed, *i. e.*, that a term shall end even though the office is unaffected.

The argument seems to be that the Faulkner Act contemplates a "clean sweep" which can be furthered only by the result reached by the majority. The trouble is that the Faulkner Act does not elsewhere reveal a guiding concept as to what is swept away. The act of course envisions change. But change of what? We believe the change intended relates to the *structure* of government and that while *faces* may be changed in the process, the change of faces is only incidental. Indeed the *Preliminary Statement* (1948) *of the Commission on Municipal Government* which proposed the statute is replete with statements of a purpose to improve the *structure* of local government. The appropriate medium for a change of faces as such would be a recall election coupled with the abolition of tenure laws. It would be quite devious and expensive as well to seek a change in government, not to achieve a better mechanism, but to effect a change of faces prior to the next scheduled election. We cannot attribute any such purpose to the Faulkner Act.[1]

---

[1] We find no support for the majority's view that the Faulkner Act adopted the approach of the Walsh Act. The Walsh Act *expressly* abolishes *terms* of office while leaving offices themselves intact. So

Since we cannot detect anywhere an intent to change faces to that end alone, we cannot find by implication that a term of office shall end notwithstanding the office continues. Nor can we find that intent by laying the Parking Authority Law, *N. J. S. A.* 40:11A–1 *et seq.*, alongside the Faulkner Act. On the contrary the clear policy of the parking statute runs the other way, for it contemplates a large measure of independence. So the commissioners of the Authority are given staggered five-year terms of office which are not correlated with the terms in the governing body of the municipality itself, *N. J. S. A.* 40:11A–4, and a commissioner of an Authority may not be an officer or employee of the municipality, *N. J. S. A.* 40:11A–5. If the Legislature intended the Parking Authority to be amenable to the will of the governing body of the municipality, it would have provided that the commissioners of the Parking Authority shall hold office at the pleasure of the appointing authority or at least that their terms shall coincide with the terms of the appointing authority. That a high degree of independence was intended of course does not mean that a Parking Authority should be hostile to its creator, but it does mean that in the process of cooperation the commissioners shall be able to disagree and to prevail within the ambit of their allotted responsibility until such time as faces are changed in the only way the statute

---

it provides in *N. J. S. A.* 40:71–9 that upon the adoption of the act and the organization of the commissioners first elected:

"* * * the governing body or bodies and all other boards and bodies whether state or local municipal agencies then existing in the municipality, except the board of education and the district court or courts, shall be *ipso facto* abolished and the *terms* of all councilmen, aldermen and *all other officers*, whether elective or appointive, shall immediately cease and determine * * *." (Emphasis added)

Thus the Walsh Act abolishes only the offices within the governing body and other boards and bodies. As to other offices, the statute ends the term of the incumbent notwithstanding the office itself is not abolished. If the Walsh Act intends by this provision to authorize a change of faces to that end alone, the fact remains that the Faulkner Act is differently worded.

permits them to be changed, *i. e.*, by the appointment of others at the end of the staggered terms of the incumbents.

We would therefore affirm the judgment.

*For reversal and remandment*—Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—5.

*For affirmance* — Chief Justice WEINTRAUB, and Justice HANEMAN—2.