JOHN E. MYERS, PLAINTIFF-RESPONDENT, v. TOWNSHIP OF CEDAR GROVE, *ET AL.*, DEFENDANTS-APPELLANTS.

Argued September 25, 1961—Decided November 6, 1961.

*Mr. Samuel Rosenblatt* argued the cause for defendants-appellants (*Mr. Nicholas H. Hagoort, Jr.,* of counsel, on the brief).

*Mr. Francis F. Welsh* argued the cause for the plaintiff-respondent.

The opinion of the court was delivered by

PROCTOR, J. The sole question presented on this appeal is whether a municipality which has adopted one of the plans of government under the Optional Municipal Charter Law, *L.* 1950, *c.* 210, *N. J. S. A.* 40:69A–1 *et seq.* (Faulkner Act), must maintain a separate and independent board of health under *Title* 26 of the *Revised Statutes, N. J. S. A.* 26:1–1 *et seq.* (Health and Vital Statistics).

Since July 1, 1955, the Township of Cedar Grove has been governed under the Council-Manager Plan B provisions of the Faulkner Act. Prior to the above date and since at least May 1947, Cedar Grove was governed by a Board of Commissioners under the Walsh Act. *R. S.* 40:70–1 *et seq.* In May 1947 the plaintiff was appointed Plumbing Inspector by that board and was reappointed periodically thereafter. In November 1953 an ordinance creating a board of health was adopted; this board reappointed plaintiff twice before the new form of government was established. No question is raised as to the legality of the reappointments.

On July 29, 1955 the new municipal Council adopted its governmental organization ordinance providing, *inter alia,* for a Board of Health, consisting of five members appointed by the Council, and giving the Township Manager power to appoint and supervise all employees of the Board including the Plumbing Inspector. This Board has functioned only in an advisory capacity. Plaintiff has not been formally appointed under the new plan of government, but has nevertheless continued to serve as Plumbing Inspector. From 1947 through 1955 he was compensated to the extent of one-half the plumbing fees collected. In 1956 his remuneration was changed by a salary ordinance of the Council to $2,500 and $300 expenses annually. This was increased to $2,600 and $300 expenses in 1957 and 1958. Upon the recommendation of the Manager, on March 10, 1959, the Council adopted an ordinance changing plaintiff's rate of compensation to $5 for each inspection and $10 for each license examination.

Dissatisfied with the change in the method and amount of his remuneration, plaintiff, as Plumbing Inspector and as a taxpayer, brought an action in the Superior Court, Law Division, contending that (1) the salary ordinance of March 10, 1959, and the organization ordinance of July 29, 1955, were void as being in violation of the Local Boards of Health chapter (*N. J. S. A.* 26:3–1 to 91) of *Title* 26 because the Township is required to maintain an autonomous board of health with the power to appoint and fix the compensation of its employees, including Plumbing Inspectors, under *N. J. S. A.* 26:3–19; and (2) the salary ordinance of March 10, 1959, was a reduction of salary in violation of plaintiff's tenure rights acquired under *N. J. S. A.* 26:3–26. Plaintiff demanded the court hold the ordinances void, direct the defendant Board of Health to adopt an ordinance establishing his annual salary at $2,600 plus $300 expenses and direct the defendant Council to pass an emergency appropriation to provide for the above amounts.

The trial court held the autonomous board of health encompassed by *N. J. S. A.* 26:3-1 was abolished when Cedar Grove adopted a plan of government under the Faulkner Act. The court further held that the Township Manager has the power to appoint and supervise the plaintiff. Although holding plaintiff had tenure, the court determined, as a matter of fact, he had not been reduced in salary or position.

The plaintiff appealed to the Appellate Division which reversed the trial court in part. 66 *N. J. Super.* 530 (1961). It determined that the "statutory" autonomous board of health under *N. J. S. A.* 26:3-1 continued to be applicable in Cedar Grove, despite the adoption of Council-Manager government in 1955. Therefore it held the ordinance of July 29, 1955, insofar as it authorized the Manager to appoint employees of the Board of Health, and the ordinance of March 10, 1959, insofar as it fixed plaintiff's remuneration, were void. And the court directed

"that Cedar Grove must and should forthwith, pursuant to *R. S.* 26:3-1 *et seq.*, as amended, adopt an ordinance providing for the establishment and manner of appointment of the members of the statutory board of health. When established, that board will have exclusive jurisdiction over the employment and compensation of its personnel, including plaintiff, as provided by *R. S.* 26:3-19 as amended." 66 *N. J. Super.*, at *p.* 544.

The court affirmed the remainder of the trial court's judgment, thereby denying plaintiff's claim with respect to compensation. The only difference in the determinations of the two courts is that the Appellate Division, contrary to the result reached by the trial court, would require an independent board of health to be maintained in a Faulkner Act municipality such as Cedar Grove. We granted defendants' petition for certification. 35 *N. J.* 59 (1961).

Defendants do not challenge plaintiff's right to tenure, and plaintiff does not question those parts of the judgment adverse to him. The sole question before us, therefore, is whether Cedar Grove, as a Faulkner Act municipality, is

required to maintain an independent board of health under *N. J. S. A.* 26:1-1 *et seq.*

The Appellate Division reasoned that "important policy considerations underlying the Board of Health Act [Title 26] are such that nothing short of a positive indication of an intent to supersede   *   *   *   [independent boards] in municipalities will suffice to effect such a result where contended to flow from the adoption of legislation establishing new forms of local government." 66 *N. J. Super.*, at *p.* 544. The court found no such expression in the Faulkner Act. It further determined that *N. J. S. A.* 26:3-1 *et seq.* was a "general law," applicable to municipalities generally, and in particular to one functioning under the Faulkner Act by virtue of *N. J. S. A.* 40:69A-26 and 28. In concluding that an autonomous board of health under *N. J. S. A.* 26:3-1 continued in Cedar Grove notwithstanding its adoption of Council-Manager government, the court relied heavily on a statement in one of the reports of the Commission on Municipal Government which proposed the legislation finally adopted as the Faulkner Act. *Final Report of the Commission on Municipal Government,* at *p.* 13 (1949). (This was the second in a series of reports.) The court found that the language in the report clearly indicated the Commission's intent to require independent boards of health in Faulkner Act municipalities. The court also determined that *N. J. S. A.* 40:69A-207, which abolished existing "offices" upon the adoption of one of the Faulkner Act plans of government did not terminate the existing Board of Health, but only abolished the offices of the members of that Board so that new members could be appointed pursuant to *N. J. S. A.* 26:3-5.

Our problem is to determine the relationship between the relevant provisions of the Faulkner Act (*N. J. S. A.* 40:69A-1 *et seq.*) and Title 26 of the Revised Statutes (*N. J. S. A.* 26:1-1 *et seq.*). In order to do this, we should first ascertain the extent of the powers given the Council and Manager under the Faulkner Act. That act provides:

"Each municipality governed by an optional form of government pursuant to this act shall, subject to the provisions of this act or other general laws, have full power to:

(a) organize and regulate its internal affairs, and to establish, alter, and abolish offices, positions and employments and to define the functions, powers and duties thereof and fix their term, tenure and compensation; * * *." *N. J. S. A.* 40:69A–29.

*N. J. S. A.* 40:69A–88 vests all powers of the municipality and the determination of all matters of policy in the Council, except as otherwise provided in the act or general law. There are no provisions in the act restricting these powers in health matters. *N. J. S. A.* 40:69A–95 provides, *inter alia,* that the Manager shall be the chief executive and administrative official of the municipality and authorizes him to appoint and remove all municipal employees except those expressly excluded from his control by other sections of the act. There are no sections of the act restricting these powers in health matters.

All these grants of power are to be construed liberally in favor of the municipality. *N. J. S. A.* 40:69A–30 provides:

"The general grant of municipal power contained in this article is intended to confer the greatest power of local self-government consistent with the Constitution of this State. Any specific enumeration of municipal powers contained in this act or in any other general law shall not be construed in any way to limit the general description of power contained in this article, and any such specifically enumerated municipal powers shall be construed as in addition and supplementary to the powers conferred in general terms by this article. All grants of municipal power to municipalities governed by an optional plan under this act, whether in the form of specific enumeration or general terms, shall be liberally construed, as required by the Constitution of this State, in favor of the municipality."

The act provides that the newly formed government will commence its operation with a clean slate (with specific exceptions) of offices and personnel. The pertinent part of *N. J. S. A.* 40:69A–207 reads:

"At 12 o'clock noon on the effective date of an optional plan adopted pursuant to this act, all offices then existing in such munic-

ipality shall be abolished and the terms of all elected and appointed officers shall immediately cease and determine; provided, that nothing in this section shall be construed to abolish the office or terminate the term of office of any member of the board of education, trustees of the free public library, commissioners of a local housing authority, municipal magistrates * * *."

In view of the above provisions, it is clear the Legislature intended to centralize maximum powers in the municipality, giving the Council and Manager the widest possible authority to determine the organization of departments and to control personnel; that the new municipal government should not be hampered in its organization by a variety of holdover boards, bodies and departments.[1] Of course, this authority is subject to the applicable provisions of "general law," *N. J. S. A.* 40:69A–26. A "general law" is defined, for the purposes of the act, as any law

"not inconsistent with this act, heretofore or hereafter enacted which is by its terms applicable or available to all municipalities, and the following additional laws whether or not such additional laws are so applicable or available to all municipalities: legislation relating to taxation, local courts, education, health, public authorities serving more than one municipality, and municipalities in unsound financial condition." *N. J. S. A.* 40:69A–28.

Having dealt with the pertinent sections of the Faulkner Act, we now consider the relevant provisions of the Health Act (*N. J. S. A.* 26:1–1 *et seq.*). When the Faulkner Act was adopted in 1950, *N. J. S. A.* 26:3–1 provided:

"There shall be a board of health in every municipality in this state, which board shall consist of members appointed or designated, or both, as provided by this chapter, *except that in any municipality operating under laws establishing a form of government for such municipality under which the full powers of a local board of health can not be exercised by a local board of health so appointed or designated, the respective functions of a local board of health shall be exercised by such boards, bodies, or officers as may exercise the same according to law.*" (Emphasis added.)

---

[1] As to the respective functions of the Council and Manager, see *Townsend v. Township of Pequannock,* 47 *N. J. Super.* 294 (*Law Div.* 1957).

This section should be read in connection with the definition of a local board of health contained in *N. J. S. A.* 26 :1–1, which in 1950 was:

"Terms defined   *   *   *
  'Local board' or 'local board of health' means the board of health of any municipality or the boards, body, or officers in such municipality lawfully exercising any of the powers of a local board of health under the laws governing such municipality."

(The 1951 amendments of sections *N. J. S. A.* 26 :3–1 and *N. J. S. A.* 26 :1–1 are not pertinent to the present issue.)

The members of the boards of health in municipalities *outside* the italicized exception clause in *N. J. S. A.* 26 :3–1 above are appointed pursuant to *N. J. S. A.* 26 :3–5. Such boards are separate and independent. They have the power to employ and supervise their own personnel, *N. J. S. A.* 26 :3–19, free from intrusion by the local governing body. *Valdes v. Baumann,* 131 *N. J. L.* 43 *(Sup. Ct.* 1943). They also have the power to adopt rules, regulations and ordinances relating to local public health. *R. S.* 26 :3–2 and 31. However, in municipalities *within* the exception clause, the functions of these boards are exercised by the appropriate officials under the laws governing such municipalities.

The exception clause in *N. J. S. A.* 26 :3–1 and the definition of a local board of health in *N. J. S. A.* 26 :1–1 first appeared in the *Revised Statutes* of 1937. *R. S.* 26 :1–1 *et seq.* The forerunner of *N. J. S. A.* 26 :3–1 was contained in the Health Act of 1887 (*L.* 1887, *c.* 68). That act required every municipality to have a board of health with powers similar to those granted under *R. S.* 26 :3–2, 19 and 31. Following the passage in 1911 of the Walsh Act (*R. S.* 40 :70–1 *et seq.*) which abolished in municipalities adopting it the "governing body or bodies * * * and the terms of * * * all other officers," the question arose as to whether an existing local board of health was included in the abolition provision. In *Istvan v. Naar,* 84 *N. J. L.* 113

(*Sup. Ct.* 1913), the court held that the Walsh Act did not abolish the boards of health organized under the general Health Act of 1887 in municipalities which adopt the Walsh Act as a governmental scheme. Shortly thereafter, the Walsh Act was supplemented by *L.* 1913, *c.* 282 (*N. J. S. A.* 40:71–9), the effect of which was to abolish existing local boards of health in Walsh Act municipalities and place their powers in the Board of Commissioners elected under that act. *Corb v. Board of Health of Town of Nutley,* 101 *N. J. L.* 50 (*Sup. Ct.* 1925). These decisions antedated the 1937 Revision and explain the inclusion of the exception in *N. J. S. A.* 26:3–1 and the definition of a local board of health in *N. J. S. A.* 26:1–1. The exception and definition were undoubtedly inserted in recognition of the existing state of the law, *i. e.,* Walsh Act municipalities were not required to maintain separate and independent boards of health. But the language of the exception and definition is not limited to Walsh Act municipalities; it is clearly broad enough to include other municipalities when existing local boards of health are abolished upon the adoption of a new plan of government.

The existing board of health in Cedar Grove came to an end when the municipality adopted Council-Manager Plan B of the Faulkner Act. *N. J. S. A.* 40:69A–207 expressly abolishes *"all offices* then existing in such municipality," (emphasis added) with specific exceptions, *viz.,* "office of any member of the board of education, trustees of the free public library, commissioners of a local housing authority, municipal magistrates \* \* \*." The local board of health is not within the listed exceptions. If the Legislature had wished to do so, it could have readily added "board of health" to the list of offices saved. The failure to include such a board indicates an intent to abolish it. *Stark v. Fell,* 124 *N. J. L.* 475 (*Sup. Ct.* 1940). The idea of diminishing the power of the new governing body by extending the number of separate and independent bodies is incompatible with the statutory scheme for the centralization of sweeping legisla-

tive and administrative authority in the Council and Manager. It is clear to us the Legislature recognized this incompatibility and intentionally abolished this board by omitting it from the list of offices saved under *N. J. S. A.* 40:69A–207. This conclusion is consonant with the purpose of the Faulkner Act as expressed in *N. J. S. A.* 40:69A–30: "The general grant of municipal power contained in this article is intended to confer the greatest power of local self-government consistent with the Constitution of this State."

In light of the above, we conclude that Cedar Grove is within the exception clause of *N. J. S. A.* 26:3–1 since it is a "municipality operating under laws establishing a form of government * * * under which the full powers of a local board of health can not be exercised by a local [independent] board of health." The provisions of the Faulkner Act relating to Cedar Grove (*N. J. S. A.* 40:69A–88, 95 and 99) place in the Council and Manager the power and duty to perform the functions previously exercised by an autonomous board of health established under *N. J. S. A.* 26:3–1. Accordingly, we hold the July 29, 1955 ordinance giving the Manager the power to appoint and supervise health employees, including the Plumbing Inspector, is valid, and the March 10, 1959 ordinance fixing plaintiff's rate of compensation is also valid.

We do not agree with the interpretation of the Appellate Division that the Board of Health survived notwithstanding the abolition of the "offices" of the members of the Board. A board cannot exist when its constituent parts—all of its offices—are abolished. Certainly the Legislature never intended the anomalous situation of retaining boards without offices. And we do not agree that the offices are abolished subject to re-establishment by municipal ordinance under *N. J. S. A.* 26:3–5. If this were intended, the phrase "abolish all offices" would be meaningless since *N. J. S. A.* 40:69A–207 provides "the terms of all * * * appointed officers shall immediately cease and determine." *N. J. S. A.* 26:3–5 requires the governing body to provide for the man-

ner of appointment of members of the board of health, but this assumes that an office of a member of such board exists in the first instance. The statute is addressed only to those municipalities not affected by the exception clause in *N. J. S. A.* 26:3–1 and does not apply to municipalities in which there are no autonomous boards of health. And we find no occasion to give effect to a statement contained in a preliminary explanatory text in the Report of the Commission on Municipal Government. The language of *N. J. S. A.* 26:3–1 and *N. J. S. A.* 40:69A–207 appears to us to be clear and explicit. Thus we should not resort to extrinsic material to determine that the Legislature intended something other than what it actually expressed. *Duke Power Co. v. Patten,* 20 *N. J.* 42, at *p.* 49 (1955); *Gangemi v. Berry,* 25 *N. J.* 1, at *p.* 10 (1957). Extrinsic aids are never used to create an ambiguity, only to resolve one. Even if we attempted to utilize the statement contained in the Commission's report, we find that it is not entirely clear. It reads:

*"The Commission* has sought to provide sufficient flexibility in the several plans so that each municipality could decide for itself how it wished to organize its local administration, within the general principle that each administrative department should be headed by a single executive. This would not permit the past practice of quasi-independent boards in many fields where they have been common, but the plans allow the operation of general laws in those fields in which boards or commissions are *essential* to carry out particular functions or discharge special trusts. These exceptions include, for example, boards of education, *boards of health* and boards of zoning adjustment. In all cases the local governing body is authorized to establish advisory boards so as to have the advantage of the broadest possible citizen consultation and participation in the affairs of local government." *Final Report of the Commission on Municipal Government,* at *p.* 13 (1949). (Emphasis added)

We agree it is essential that there be in every municipality a body charged with the duty of enforcing the substantive provisions of the general law, *Title* 26. See *N. J. S. A.* 40:69A–26. However, *N. J. S. A.* 26:1–1 and *N. J. S. A.* 26:3–1 provide that such body need not be an autonomous

board of health. We do not know what type of board was intended by the Commission. Undoubtedly, it was aware that autonomous boards of health were not "essential" in Walsh Act municipalities. *Corb v. Board of Health of Town of Nutley, supra; Larkey v. City of Bayonne,* 123 *N. J. L.* 134 *(Sup. Ct.* 1939), aff'd 124 *N. J. L.* 172 *(E. & A.* 1940); *cf. Valdes v. Baumann, supra.* In any event, the Commission's construction in its report finds no support in the text of the statute. Finally, we see no legislative policy favoring the retention of independent boards of health in municipalities adopting new forms of government. In 1950, when the Faulkner Act was adopted, many municipalities, including the largest cities in the State, were governed under the Walsh Act and therefore were not required to retain their pre-existing independent boards of health. With so many exceptions there could be no such policy.

The judgment of the Appellate Division insofar as it modifies the judgment of the trial court is reversed and the judgment of the trial court is reinstated. No costs to any party in any court.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.