74 N.J. Super. 548 (1962)
181 A.2d 795
WILLIAM DOWNEY, JOSEPH C. TOSCANO AND HARRY F. SALOMON, PLAINTIFFS-RESPONDENTS,
v.
BOARD OF EDUCATION OF JERSEY CITY, COUNTY OF HUDSON, DEFENDANT, AND EDWARD J. DONNELLY, WILLIAM J. O'KEEFE AND AUGUSTUS A. TOMAIUOLI, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 2, 1962.
Decided June 6, 1962.
*549 Before Judges CONFORD, GAULKIN and KILKENNY.
*550 Mr. Solomon Lubow argued the cause for defendants-appellants.
Mr. T. James Tumulty argued the cause for respondents (Mr. Ezra L. Nolan, attorney).
The opinion of the court was delivered by GAULKIN, J.A.D.
Defendants appeal from a Law Division judgment which ousted them as members of the Jersey City Board of Education and adjudged that plaintiffs were entitled to the posts. The facts are not in dispute.
In 1957 Charles Witkowski was elected a commissioner and chosen mayor of Jersey City, then under Walsh Act commission government (R.S. 40:75-1 et seq.). In November 1960 Jersey City adopted mayor-council plan C of the Faulkner Act, N.J.S.A. 40:69A-55 et seq., and pursuant thereto, on May 9, 1961, an election for mayor and councilmen was held. Witkowski, Bernard J. Berry and Thomas Gangemi were candidates for mayor at that election. No one having received a majority of the votes cast, a runoff was held on June 13 at which Gangemi was elected mayor. Under N.J.S.A. 40:69A-58 the term of office of mayor is four years "beginning on the first day of July next following his election." In the meantime Witkowski held over under N.J.S.A. 40:75-2.1.
Jersey City is a chapter 6 school district (R.S. 18:6-1 et seq.), with a board of education of nine members. Under R.S. 18:6-7 three of them are to be appointed "by the mayor * * * during the month of June of each year for a term of three years beginning on the first of July next succeeding the date of their appointment."
On June 29, 1961 Witkowski appointed defendants as members of the board of education and they took office. On July 1 at noon the newly adopted form of government took effect and Gangemi took office as mayor, N.J.S.A. 40:69A-205. Gangemi then appointed plaintiffs as members *551 of the board of education. When the board of education refused to seat plaintiffs, they instituted this in lieu action.
Upon the foregoing facts, which were stipulated, the Law Division ousted defendants from the board and installed plaintiffs in their stead upon the authority of N.J.S.A. 40:69A-208(a) which provides as follows:
"(a) No subordinate board, department, body, office, position or employment shall be created and no appointments shall be made to any subordinate board, department or body, or to any office, employment or position, including without limitation patrolmen and firemen, between the date of election of officers and the date the newly elected officers take office under any optional plan."
This section is part of what N.J.S.A. 40:69A-26 calls the "transitional provisions" of the Faulkner Act.
Defendants contend that 208(a) does not apply, arguing that a board of education is not a "subordinate board, department or body." Plaintiffs answer that even if that be so, section 208(a) also forbids appointment "to any office, employment or position" during the transitional period, whether it be to a "subordinate board" or not. Defendants disagree. They urge that, applying the rules of ejusdem generis and noscitur a sociis, the words "any office, employment or position" must be construed to mean subordinate offices, employments and positions, such as those which the governing body is forbidden to create by 208(a), and therefore do not include members of boards of education.
Basic to defendants' contentions is the proposition that an office or board is "subordinate" within the meaning of section 208(a) only when it is subject to the direction and control of the governing body of the municipality, or is an arm of the municipal government, performing exclusively municipal functions. Defendants argue that bodies such as boards of education, and housing authorities created under N.J.S.A. 55:14A-1 et seq. are therefore not "subordinate" but "independent," and section 208(a) does not apply to them, citing Botkin v. Westwood, 52 N.J. Super. 416 (App. Div. 1958), appeal dismissed 28 N.J. 218 (1958), and *552 Monte v. Milat, 17 N.J. Super. 260 (Law Div. 1952).[1] See also Durgin v. Brown, 37 N.J. 189 (1962); Tumulty v. Jersey City, 57 N.J. Super. 503 (App. Div. 1959); but see Myers v. Township of Cedar Grove, 36 N.J. 51 (1961).
If section 208(a) does not apply to "independent" boards, bodies and offices, and the words "any office" in said section are limited in the fashion advanced by defendants, an outgoing administration could create a housing authority during the transitional period and appoint its members, or establish a municipal court and appoint a magistrate. N.J.S. 2A:8-1; Krieger v. Jersey City, 27 N.J. 535 (1958). The Legislature obviously intended no such result. Myers v. Township of Cedar Grove, supra. That result is avoided if the words "any office" are applied literally and are not limited to "subordinate" offices and membership on "subordinate" boards. Then, even assuming (without deciding) that the outgoing governing body has the power to create an "independent" board or body, such as a housing authority or magistrate's court, it would be prevented, by 208(a), from appointing its members. It seems to us plain that any other construction would be inconsistent with what the Legislature intended to accomplish.
Is there any reason why the words should not be applied literally? Unless there is something about the language or its effect that compels us to do otherwise, a statute must be construed according to the generally accepted meaning of its words.
We find no ambiguity in the words "any office, employment or position." They are words commonly used, easily understood and plainly all-inclusive.
*553 Defendants do not deny that, standing apart, the words are plain and unambiguous, but they argue that their association with the remainder of 208(a) limits their generality under the rule of ejusdem generis. But the rule of ejusdem generis is to be resorted to as an aid to construction only when words of a statute are of doubtful meaning, and not when the legislative design is expressed in plain terms; and plain general terms of a statute must be given their ordinary meaning, even if beyond the particularity of associated words, unless it appears from the context or the effect that the legislature must have intended otherwise. Edwards v. Mayor, etc., of Moonachie, 3 N.J. 17 (1949).
If the Legislature had here intended the narrow construction advanced by defendants, it could have said so simply and more briefly by having 208(a) read as follows (the eliminated words are bracketed):
"(a) No subordinate board, department, body, office, position or employment shall be created and no appointments shall be made to any subordinate board, department, [or] body, [or to any] office, employment or position, including without limitation patrolmen and firemen, between the date of election of officers and the date the newly elected officers take office under any optional plan."
Note that this would have been done merely by repeating the words of the "creation" clause in the "appointments" clause. It seems to us obvious that if the Legislature intended to forbid only appointments to the very same boards, departments, bodies, offices, positions and employments the creation of which it had forbidden, it would have followed the grammatically simple and psychologically expected course of merely repeating the words of the "creation" clause. When the Legislature departed from the direct course, broke up and rearranged the words, interpolated the bracketed words, and repeated the word "any" before the word "office" (which would have been unnecessary if the Legislature intended the meaning advanced by defendants), it showed plainly that it meant the appointments clause to be all-inclusive.
*554 Defendants argue that R.S. 18:6-7 directs that the members of boards of education be appointed by the mayor in June; since this is a specific provision of the Education Act, a general act which controls even Faulkner Act communities, it is not affected by the general language of section 208(a); therefore Witkowski not only had the right but the duty to make the appointments. We disagree.
The plain and all-pervading intent of the Faulkner Act is to give a municipality which adopts one of its optional plans a new broom. In a chapter 6 municipality the school finances are almost entirely controlled by a board of school estimate, consisting of the mayor, two members of the board of education appointed by it, and two members of the governing body chosen by the latter. The governing body must raise the money to implement the decisions of the board of school estimate. R.S. 18:6-48 et seq. During the term of office of the outgoing mayor, he will have appointed all nine members of the board of education. Even though the board of education is and should be independent, it is hardly conducive to good government or to the welfare of the schools or of the municipality to have all nine members unfriendly and in political opposition to the incoming administration, as would be the case during the first year of the new administration if defendants' argument were to prevail. The Legislature could not have been unmindful of these considerations. We are of the opinion that the Legislature meant for the incoming mayor to appoint the members of the board of education who were to take office the very same day he did. R.S. 18:6-7.
But, say defendants, N.J.S.A. 18:6-13 provides that the board of education shall meet, organize, and elect its president and vice-president on July 1, but it does not fix the hour except that no meeting may commence after 8 P.M. under R.S. 18:5-47. The incoming mayor does not take office, as we have seen, until 12 o'clock noon on July 1. Therefore, say defendants, the board of education might organize before noon and the naming of the new *555 members, and thus only six members of the board of education would organize, elect officers and conduct business.
We pass the question whether such action by the six would be legal. If the six were so embittered as to take such action, it would demonstrate forcibly the desirability of having three new members on the board. However, we can not believe that members of boards of education would so behave. But even if there were such a brief hiatus, we note that the Education Act contemplates vacancies up to 30 days. R.S. 18:6-7.
Defendants make a point of the fact that boards of education are excepted from section 207, which provides that "at 12 o'clock noon on the effective date of an optional plan adopted pursuant to this act, all offices [with named exceptions] then existing in such municipality shall be abolished and the terms of all elected and appointed officers shall immediately cease and determine * * *." Defendants argue that this means that members of boards of education are exempted also from 208(a), citing Monte v. Milat, supra. That, however, is a non sequitur. Trustees of a free public library are also exempted from section 207, yet we conceive that the outgoing administration could not appoint such trustees during the transitional period. Cf. Trustees of Free Public Library of Newark v. Civil Service, 83 N.J.L. 196 (Sup. Ct. 1912), affirmed 86 N.J.L. 307 (E. & A. 1914); Monte v. Milat, supra, at p. 266. And in Monte v. Milat the effect of the words "to any office" was not raised.
It is to be noted that section 208(a) did not appear in the original Faulkner Act but was enacted by L. 1954, c. 69. Prior to the adoption of section 208(a), section 207 already provided, as we have said, that at 12 o'clock noon on the effective date of an optional plan all existing offices were abolished and the terms of all officers ended. Therefore, if 208(a) were construed as defendants contend it should be, it would have very limited utility, for appointments to such boards, offices and employments as defendants argue *556 may not be made under 208(a) would terminate in any event under 207 at noon of July 1, even if 208(a) had not been enacted. Cf. Myers v. Township of Cedar Grove, supra. Therefore it is obvious that 208(a) was intended to prevent the appointment to offices which would not be swept away by 207. Otherwise there was no need to enact 208(a).
It may be argued that the sole purpose of 208(a) was to prevent the appointment, during the transitional period, of officers and employees who might immediately obtain tenure  for example, veterans. Those with tenure are excepted from the operation of section 207. But it is to be noted that in the very same statute which created 208(a) (L. 1954, c. 69) commissioners of a local housing authority and municipal magistrates were added to the exceptions to the operation of section 207. As we have pointed out, it would be entirely inconsistent with the intent evidenced by the remainder of the Faulkner Act to assume that the Legislature intended to permit the creation of a local housing authority and the appointment of its commissioners, or to establish a municipal court and appoint a magistrate during the transitional period.
In short, we hold that the words "any office, employment or position" in 208(a) are not limited in the fashion alleged by defendants, but are all-inclusive. They are to be read literally and enforced accordingly. The judgment is affirmed.
NOTES
[1] Many other boards are, in legal theory, free from the control of the governing body. For example: trustees of public libraries, N.J.S.A. 40:54-12; sewerage authorities, N.J.S.A. 40:14A-7; incinerator authorities, N.J.S.A. 40:66A-7; parking authorities, N.J.S.A. 40:11A-6; port authorities, N.J.S.A. 40:68A-7; boards of adjustment, N.J.S.A. 40:55-39. Under defendant's construction, it might be argued that some of them also are "independent."