75 N.J. Super. 553 (1962)
183 A.2d 505
RICHARD D. JORDAN, ET AL., PLAINTIFFS,
v.
MURRAY ZIDEL, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 29, 1962.
*554 Mr. Carl P. Schulze argued the cause for the plaintiffs (Messrs. Dimon, Haines & Bunting, attorneys).
Mr. Sidney W. Bookbinder argued the cause for the defendants (Messrs. Bookbinder, Peskin & Markowitz, attorneys).
SCHALICK, J.S.C.
As the result of a referendum, on November 8, 1960, Levittown Township adopted Council-Manager Plan E form of government under Optional Municipal Charter Law, N.J.S.A. 40:69A-1 et seq. On November 7, 1961 the councilmen were elected, and the change of form of government took effect at noon on January 1, 1962. On January 8, 1962 the township council by a resolution appointed defendants George Harrigle, Frank Cuspilich, Seymour Gordon, Joseph Fitzgibbon and Earl J. Applegate to the Levittown Municipal Utilities Authority, and by a resolution fixed their terms of office. They were appointed to replace others who held the offices prior to January 1, 1962.
The plaintiff, George C. Brandau, was holding one of the offices prior to January 1, 1962, by an appointment made on February 1, 1961 for a term of five years, and he contests the right of office of defendant Fitzgibbons who was appointed as his successor. The plaintiff, Richard D. Jordan, as a taxpayer, seeks to invalidate the resolution of the council appointing the defendants.
The defendants allege that all persons in office as members of the Utilities Authority ceased to hold office on January 1, 1962, and the succeeding appointments of the defendants were in accordance with statutory authority.
The issue is before the court on motions for summary judgment.
The authority, established under N.J.S.A. 40:14B-1 et seq., is a "public body politic and corporate *555 constituting a political subdivision of the State." N.J.S.A. 40:14B-16 provides:
"Each member of a municipal authority shall hold office for the term for which he was appointed and until his successor has been appointed and has qualified. A member of a municipal authority may be removed only by the governing body by which he was appointed and only for inefficiency or neglect of duty or misconduct in office and after he shall have been given a copy of the charges against him and, not sooner than 10 days thereafter, had opportunity in person or by counsel to be heard thereon by such governing body."
The section of the statute relevant to this issue is N.J.S.A. 40:14B-68:
"This act shall be construed liberally to effectuate the legislative intent and as complete and independent authority for the performance of each and every act and thing herein authorized, and a municipal authority shall not be subject to, or constitute a municipality or agency or component of a municipality subject to, the provisions of chapter 50 or any other provisions of Title 40 of the Revised Statutes, or be subject to regulation as to its service charges by any officer, board, agency, commission or other office of the state; * * *."
Defendants rely on this provision of the Charter Law, N.J.S.A. 40:69A-207:
"At 12 o'clock noon on the effective date of an optional plan adopted pursuant to this act, all offices then existing in such municipality shall be abolished and the terms of all elected and appointed officers shall immediately cease and determine; provided, that nothing in this section shall be construed to abolish the office or terminate the term of office of any member of the board of education, trustees of the free public library, commissioners of a local housing authority, municipal magistrates or of any official or employee now protected by any tenure of office law, or of any policeman, fireman, teacher, principal or school superintendent whether or not protected by a tenure of office law. If the municipality is operating under the provisions of Title 11 of the Revised Statutes (Civil Service) at the time of the adoption of an optional plan under this act, nothing herein contained shall affect the tenure of office of any person holding any position or office coming within the provisions of said Title 11 as it applies to said officers and employees. If the municipal clerk has, prior to the effective date of the optional plan, acquired *556 a protected tenure of office pursuant to law, he shall become the first municipal clerk under the optional plan.
Provision for officers and for the organization and administration of the municipal government under the optional plan may be made by resolution pending the adoption of ordinances, but any such resolution shall expire not later than 30 days after the effective date of the optional plan."
If this section of the Charter Law applies without any other legislative restriction, then the terms of the appointed officers of this authority would "cease and determine," and other persons would be legally appointed to such offices. Such a change would not affect the authority differently from vacancies arising by death or resignation, if all of the offices were vacated for such reasons.
The plaintiffs contend that termination of the terms of office under the Charter Law does not occur because the Authorities Law supersedes the Charter Law section when it expressly excludes the provisions of Title 40 of the Revised Statutes, because the Charter Law is a part of Title 40.
As cited supra, the Authorities Law makes such a reference, "and a municipal authority shall not be subject to, or constitute a municipality or agency or component of a municipality subject to, the provisions of Chapter 50 or any other provisions of Title 40 of the Revised Statutes." Chapter 50 deals with the statutory regulation of municipal contracts, while Title 40 embraces all phases of municipal law. The Charter Law, as chapter 69A, is a supplement to Title 40.
The Charter Law is the result of legislative studies which led to the several plans by which the electorate can change the form of government by referendum. The provisions of the Charter Law would not be modified by the reference to the Title 40 exclusion in the Authorities Law. The Charter Law carefully excludes the termination of "the term of office of any member of the board of education, trustees of the free public library, commissioners of a local housing *557 authority, municipal magistrates," but offices of utilities authorities are not set forth in the exclusion.
In Myers v. Cedar Grove Township, 36 N.J. 51, 56 (1961), Justice Proctor analyzes the Charter Law:
"The act provides that the newly formed government will commence its operation with a clean slate (with specific exceptions) of offices and personnel. The pertinent part of N.J.S.A. 40:69A-207 reads:
`At 12 o'clock noon on the effective date of an optional plan adopted pursuant to this act, all offices then existing in such municipality shall be abolished and the terms of all elected and appointed officers shall immediately cease and determine; provided, that nothing in this section shall be construed to abolish the office or terminate the term of office of any member of the board of education, trustees of the free public library, commissioners of a local housing authority, municipal magistrates * * *.'
In view of the above provisions, it is clear the Legislature intended to centralize maximum powers in the municipality, giving the Council and Manager the widest possible authority to determine the organization of departments and to control personnel; that the new municipal government should not be hampered in its organization by a variety of holdover boards, bodies and departments. Of course, this authority is subject to the applicable provisions of `general law,' N.J.S.A. 40:69A-26. A `general law' is defined, for the purposes of the act, as any law `not inconsistent with this act, heretofore or hereafter enacted which is by its terms applicable or available to all municipalities, and the following additional laws whether or not such additional laws are so applicable or available to all municipalities: legislation relating to taxation, local courts, education, health, public authorities serving more than one municipality, and municipalities in unsound financial condition.' N.J.S.A. 40:69A-28."
Any effort to alter or nullify the termination provision, N.J.S.A. 40:69A-207, by the exclusionary reference to Title 40 in the Authorities Law would give effect to a statute inconsistent with the Charter Law.
In the requirement under N.J.S.A. 40:69A-26 that the municipality shall be governed "by all applicable provisions of general law," there is inserted the reservation that the applicability of the general law shall be "subject to the transitional provisions of article 17 of this act," with *558 footnote 2 naming sections 40:69A-150 to 40:69A-210. These sections include N.J.S.A. 40:69A-207, cited supra. "General law" is defined, cited in Myers v. Cedar Grove Township, supra, as "any law or provision of law, not inconsistent with this act, heretofore or hereafter enacted * * * applicable or available to all municipalities." N.J.S.A. 40:69A-28.
The statutory definition of "general law" continues, "and the following additional laws whether or not such additional laws are so applicable or available to all municipalities: legislation relating to taxation, local courts, education, health, public authorities serving more than one municipality, and municipalities in unsound financial condition." (Italics mine)
To uphold the plaintiffs' contentions would ignore "the transitional provisions," as well as apply a "general law" "inconsistent with this act." The reference to "additional laws," which includes legislation applicable to "public authorities serving more than one municipality," is not applicable to the instant case.
The legislative intendment is expressed in N.J.S.A. 40:69A-30:
"The general grant of municipal power contained in this article is intended to confer the greatest power of local self-government consistent with the Constitution of this State. Any specific enumeration of municipal powers contained in this act or in any other general law shall not be construed in any way to limit the general description of power contained in this article, and any such specifically enumerated municipal powers shall be construed as in addition and supplementary to the powers conferred in general terms by this article. All grants of municipal power to municipalities governed by an optional plan under this act, whether in the form of specific enumeration or general terms, shall be liberally construed, as required by the Constitution of this State, in favor of the municipality."
The "clean slate" doctrine has been recognized as the desired result when there is a change in the form of government. Unless there is a specific legislative exception, *559 the term of office of the members of all boards and bodies are terminated. It must be recognized that the members of this authority hold offices in the municipality. The specific provisions of the Charter Law authorizes the officials of the new government to appoint successors to the persons whose terms of office expired with the change.
If the Charter and the Authorities Law are read together, there is no conflict. The change of government may be given its full effect and the structure of the authority is in no sense altered or modified.
The plaintiffs have failed to sustain their position and judgment will be entered for the defendants.