RICHARD D. JORDAN, GEORGE C. BRANDAU, PLAINTIFFS-APPELLANTS, v. MURRAY ZIDEL, *ET AL.*, DEFENDANTS-RESPONDENTS.

February 19, 1963—Decided May 20, 1963.

*Mr. Martin L. Haines* argued the cause for the plaintiffs-appellants (*Messrs. Dimon, Haines and Bunting,* attorneys; *Mr. Carl P. Schulze,* on the brief).

*Mr. Sidney W. Bookbinder* argued the cause for the defendants-respondents (*Messrs. Bookbinder, Peskin & Markowitz,* attorneys; *Mr. Victor Friedman* and *Mr. Sanford Soren,* on the brief).

The opinion of the court was delivered by

PROCTOR, J.  The sole issue on this appeal is whether the terms of office of members of a municipal utilities authority, created by a municipality pursuant to the Municipal Utilities Authorities Law, *L.* 1957, *c.* 183, *N. J. S. A.* 40:14B–1 *et seq.,* terminate on the effective date of a new plan of government adopted by the municipality under the Optional Municipal Charter Law, *L.* 1950, *c.* 210, *N. J. S. A.* 40:69A–1 *et seq.* (Faulkner Act).

The facts are not in dispute.  On October 7, 1957 the Township of Willingboro, which was then governed by a

township committee, enacted an ordinance reorganizing its sewerage authority and creating the Willingboro Municipal Utilities Authority pursuant to the Municipal Utilities Authorities Law, *supra*, N. J. S. A. 40:14B–6. Thereafter, members were duly appointed to the Authority, bonds were issued by it, and the normal functions of such an authority were undertaken. Following the change in name of the township from Willingboro to Levittown, the Authority was redesignated the Levittown Municipal Utilities Authority.

On January 1, 1962 Council-Manager Plan E, one of the optional plans of government under the Faulkner Act (*N. J. S. A.* 40:69A–114.1 to 114.5), became effective in the township pursuant to a referendum previously adopted. On January 8, 1962 the new municipal council by resolution appointed the defendants Harrigle, Cuspilich, Gordon, Fitzgibbon and Applegate as members of the Authority. They were appointed to replace others, including the plaintiff Brandau, who held the offices prior to January 1, 1962. Brandau had been appointed as a member of the Authority on February 1, 1961, for a term of five years, and he contests the right of office of the defendant Fitzgibbon, who was appointed as his successor. The plaintiff Jordan, as a taxpayer, seeks to invalidate the resolution of the defendant council by which the above-named defendants were appointed. At the time the action was commenced, the Authority had outstanding bonds in the amount of $210,000.

The plaintiffs contend that the members of the Authority who held office prior to January 1, 1962, continued to be the legal members of the Authority until the expiration of their appointed terms, and that the resolution of the new council purporting to appoint the above-named defendants was a nullity. The defendants contend that the terms of office of all members of the Authority came to an end on January 1, 1962, by operation of *N. J. S. A.* 40:69A–207 of the Faulkner Act, which became effective in the township on that date, and that the new appointees are the legal members of the Authority.

On cross motions for summary judgment, the trial court held that though "the structure of the authority is in no sense altered or modified," the terms of office of the members were terminated on the effective date of the new plan of government by operation of *N. J. S. A.* 40:69A–207. *Jordan v. Zidel,* 75 *N. J. Super.* 553, 559 (*Law Div.* 1962). Judgment was accordingly entered for the defendants. We certified the plaintiffs' ensuing appeal while it was pending in the Appellate Division.

We think the judgment of the trial court must be affirmed under the principles set forth in *Broadway National Bank of Bayonne v. Parking Authority of the City of Bayonne,* 40 *N. J.* 227 (1963) (Broadway), decided today. In that case we held that the terms of office of commissioners of a parking authority created by a municipality pursuant to the Parking Authority Law, *N. J. S. A.* 40:11A–1 *et seq.,* terminate by operation of *N. J. S. A.* 40:69A–207 on the effective date of a new plan of government adopted by the municipality under the Faulkner Act. The pertinent part of *N. J. S. A.* 40:69A–207 is as follows:

"At 12 o'clock noon on the effective date of an optional plan adopted pursuant to this act, * * * the terms of all elected and appointed officers shall immediately cease and determine; * * *."

We find no basis for distinguishing between the terms of office of commissioners of a parking authority and the terms of office of members of a muncipal utilities authority.

Just as the Parking Authority Law permits a municipality to create a separate corporate entity as its instrumentality to perform the municipal function of alleviating traffic congestion by providing off-street parking facilities, so also does the Municipal Utilities Authorities Law permit the municipality to create a similar independent entity to provide municipal water and sewer services. In each case the authority so created is a separate body politic and corporate and a political subdivision of the State, with broad independent powers to acquire property, issue bonds, and fix rates for its

services. Compare *N. J. S. A.* 40:11A–4, 6, 8 with *N. J. S. A.* 40:14B–20 to 23, 25. At the same time, both are agencies and instrumentalities of the municipalities creating them and are engaged in the fulfillment of municipal functions, and both the commissioners of a parking authority and the members of a municipal utilities authority are appointed by the governing bodies of the municipalities creating such authorities. Compare *N. J. S. A.* 40:11A–4 with *N. J. S. A.* 40:14B–4. Also compare *Broadway, supra,* with *Camden County v. Pennsauken Sewerage Auth.,* 15 *N. J.* 456 (1954). In *Camden County,* this court construed the Sewerage Authorities Law, *N. J. S. A.* 40:14A–1 *et seq.,* which provides for an authority having substantially the same powers, structure and relationship to the municipality with respect to sewer service as does a municipal utilities authority with respect to both water and sewer services. It was there said at *p.* 465:

"Though [a sewerage authority is] given a measure of autonomy, it is nevertheless the *alter ego* of the municipality in the service of this essential public need. While a separate and distinct economic and governmental unit, it is but the means of discharging the local governmental responsibility for the public health, comfort, convenience and welfare in relation to the disposal of sewage, * * *."

From the foregoing it is clear that a municipal utilities authority, like a sewerage authority and a parking authority, is but a means of discharging local governmental responsibilities for the welfare of the inhabitants of the community.

Moreover, we think the Legislature envisioned a rapport between the members of a municipal utilities authority and the governing body. An examination of the Municipal Utilities Authorities Law shows an intent that a close relationship should exist between a utilities authority and the creating municipality similar to that which, in *Broadway, supra,* we found was intended to exist under the Parking Authority Law between a parking authority and the municipality. Both laws empower municipalities to cooperate with the authorities therein authorized by donating or lending funds and granting

or conveying real or personal property to them, and by permitting the authorities to use existing municipal facilities in the performance of their particular municipal functions. Compare *N. J. S. A.* 40:11A–21 to 23 with *N. J. S. A.* 40:14B–24, 48. In *Kohler v. Cobb,* 31 *N. J.* 369, 374 (1960), this court recognized that the Sewerage Authorities Law, *supra,* the pertinent parts of which as we have said are substantially the same as those of the Municipal Utilities Authorities Law, shows such a "close relationship" between a sewerage authority and the municipality which creates it that a person appointed as a member of such authority, before assuming office, must take the same oaths as are required of officials of the municipality. In addition, the governing body may by ordinance permit a municipal utilities authority to compensate its members for their services, but only within such limitations as are stated in the ordinance. *N. J. S. A.* 40:14B–17. This provision, which does not appear in the Parking Authority Law (compare *N. J. S. A.* 40:11A–5), emphasizes the close relationship intended to exist between the members of the authority and the governing body.

In *Broadway, supra,* we held that a purpose of *N. J. S. A.* 40:69A–207 was to give "the newly-created government * * * an opportunity to achieve a harmonious relationship among those who are to be charged with the fulfillment of local municipal functions upon the establishment of the new government." 40 *N. J.,* at *p.* 236. We there observed that "even though the parking authority is an independent entity, it would hardly be conducive to good government or to the welfare of the municipality to have parking authority commissioners who are unfriendly toward, and in political opposition with, the newly-formed government." 40 *N. J.,* at *p.* 236. We think these principles apply with equal force to members of a municipal utilities authority, who, within the sphere of their municipal activity, stand in the same relation to the municipality as do the commissioners of a parking authority.

For the above reasons, we hold that upon the taking effect of the new plan of government in the township on Janu-

ary 1, 1962, the terms of the members of the Levittown Municipal Utilities Authority, including the term of the plaintiff Braudau, immediately ceased and determined, and that the action of the township council in appointing the five new members of the Authority was valid.

The judgment of the trial court is affirmed.

WEINTRAUB, C. J. and HANEMAN, J. (dissenting). We would reverse the judgment upon the thesis set forth in our dissent in *Broadway National Bank of Bayonne v. Parking Authority of the City of Bayonne,* 40 *N. J.* 227 (1963), decided today.

*For affirmance*—Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—5.

*For reversal* — Chief Justice WEINTRAUB, and Justice HANEMAN—2.