LARRY BUTLER, PLAINTIFF, v. NICHOLAS AMATO, COUNTY EXECUTIVE OF ESSEX COUNTY AND COUNTY OF ESSEX, DEFENDANTS.

Superior Court of New Jersey
Law Division Essex County

Decided May 7, 1987.

*Ronald C. Hunt* for plaintiff (*Ashley & Charles*, attorneys).

*Edward J. Seaver* and *H. Curtis Meanor* for defendants (*Podvey, Sachs, Meanor & Catenacci*, attorneys).

YANOFF, J.S.C. (retired and temporarily assigned on recall).

Most of the facts in this case are not in dispute.

On January 5, 1976, pursuant to *N.J.S.A.* 30:8–15, Albert Collier was appointed Warden of the Essex County Jail for a three-year term. He was reappointed January 1979, thus obtaining tenure. *N.J.S.A.* 30:8–15.2.

Collier died in office on July 29, 1984. By request for "personnel action" addressed to the New Jersey Department of Civil Service, Local Government, signed by Butler October 24, 1984, certified by the appointing authority (presumably signed

by Peter Shapiro, then County Executive, without date) and carrying "effective date November 5, 1984," Butler was designated a nonclassified appointment "recorded in accordance with ... *N.J.S.A.* 30:8–15." This document contains other dates which seem insignificant. I conclude that the designation of Butler as an unclassified appointment was approved by an agent of the Civil Service Department under date of December 18, 1984.

The board of freeholders, by resolution dated December 12, 1984, presented Butler with a plaque which "congratulates" him on his appointment as warden.

On December 5, 1986, Nicholas R. Amato, newly elected County Executive, wrote to Butler:

> As you are aware, I will assume the duties of County Executive on January 1, 1987 and it is essential that I have my management team in place shortly thereafter. As a matter of professional courtesy, therefore, I would like to receive a letter from you resigning from your current position effective January 1. I would like to receive your letter by Monday, December 15, 1986, at the transition team office.
>
> In the event you are interested in serving within my administration in your current or some other capacity, please indicate the same in separate correspondence. Kindly include your resume and a statement of your managerial accomplishments, as well. Your expression of interest will receive my utmost consideration as I attempt to shape the direction of County government for the next four years.

Butler, in answer, sent two letters, both dated December 16, 1986. One read, "In response to your request stated in your 12–5–86 letter to me, please find attached my letter of resignation, effective 1–1–87." The second letter begins:

> In response to your letter of 12–5–86 please be advised that I am most interested in serving your Administration and maintaining my position as Warden of the Essex County Jail.

There followed Butler's statements as to his qualifications for appointment.

After taking office, Amato sent Butler a "Notice of Termination," stating:

> After very careful deliberation, I regret to inform you that I have decided to accept your resignation as Warden, effective today, January 2, 1987.

> My decision was neither easy nor pleasant as I am aware of your contributions to Essex County Government. I feel, however; that changes are a natural part of public sector administration and I am exercising my prerogative to appoint individuals who are more closely attuned to my philosophy of government.

Butler now claims that he did not effectively resign, and that he, rather than his successor, is entitled to the office of Warden of Essex County. He asserts also that his appointment in December 1984 was for a three-year term, beginning with the date of his appointment. Additionally, he argues that his failure to continue in office under the new regime constituted a violation of his First Amendment rights, as enunciated in *Elrod v. Burns*, 427 *U.S.* 347, 96 *S.Ct.* 2673, 49 *L.Ed.*2d 547 (1976) and *Branti v. Finkel*, 445 *U.S.* 507, 100 *S.Ct.* 1287, 63 *L.Ed.*2d 574 (1980). He claims also that his resignation was not effective for reasons which need not be examined [1] because I have concluded that he is not entitled to the office of warden.

On Butler's behalf, it was first argued that he was appointed as Collier's successor on December 4, 1984, to a four-week term, and then reappointed by the county executive in January 1985 to a three-year term. When no evidence appeared as to appointment in 1985, he argued that his appointment in December 1984 had been to a three-year term. The affidavit of the county executive then in office as to this reads, in pertinent part:

> 5. On December 4, 1984, I appointed Larry Butler to the position of Warden of Essex County pursuant to N.J.S.30:8–15 to a three-year term *de novo*. Said appointment did not require approval by the Essex County Board of Chosen Freeholders, pursuant to 'Optional County Charter Law.' See N.J.S.40:41A et seq.

> 6. It is my clear understanding and belief as the former Executive of Essex County that Mr. Butler's term of office shall continue to run until December 4, 1987, or whenever thereafter as his lawful term shall end.

---

[1] I do not foreclose the *possibility* that if it were necessary to decide this question an issue *might* exist. *Shanley & Fisher, P.C. v. Sisselman*, 215 *N.J.Super.* 200, 212–213 (App.Div.1987).

Nothing in the papers submitted to me indicates reappointment in 1985. But, whatever the then county executive may say now, the request for "personnel action" described above makes no mention of term and relies for authority upon *N.J.S.A.* 30:8–15, which reads:

> The board of chosen freeholders of each county of the first class may appoint for a term of 3 years a warden of the penitentiary, a warden of the county jail, a physician for the penitentiary and a physician for the county jail. The terms of office of all such officers now holding office shall expire on January 1, 1946 and thereafter all appointments shall be made for the term of 3 years. All vacancies in said offices caused by death, resignation or otherwise shall be filled by the board of chosen freeholders for the unexpired terms.

Under this statute the first term of a warden began January 1, 1946 and ended December 31, 1948. Each term being three years in duration, simple calculation shows that the *most previous* term was from January 1, 1982 to December 31, 1984 and the present term began January 1, 1985 and ends December 31, 1987.

Involved in this case is the interaction between *N.J.S.A.* 30:8–15 and the operations of a county under "The County Executive Plan." *N.J.S.A.* 40:41A–31 *et seq.* Essex County opted for the "County Executive Plan," effective in 1979. Pursuant to the powers conferred upon a county selecting this form of government, *N.J.S.A.* 40:41A–27, Essex County adopted an administrative code (hereinafter code) by ordinance effective May 1, 1979.

Article 14.3 of the code, as amended, under the heading "Transitional Provisions," provides:

> *Offices Continued, etc.* All offices, positions, and employments, which are continued or re-established by this Code, are transferred to the respective departments, offices, and agencies to which their functions are allocated and assigned by this Code. The terms of all incumbents heretofore appointed for a fixed term to such offices, positions, and employments and the terms of all members of existing boards, agencies, commissions or authorities shall terminate as of the effective date of this Code, except that such officers or members of boards, commissions, and authorities that are continued may continue to serve until appointment and qualification of their successors, or may be reappointed to serve out the unexpired portion of their terms. [at 60]

■ The full import of this provision can be understood when the statute is considered. *N.J.S.A.* 40:41A–25 provides that after the optional county form of government has been adopted "the county shall thereafter be governed by the plan adopted, by the provisions of this law applicable to all optional plans, and by all general laws, subject to the transitional provisions in article 7 of this act." *N.J.S.A.* 40:41A–26 defines "general law":

> For the purposes of this act, a 'general law' shall be deemed to be such law or part thereof, heretofore or hereafter enacted, that:
>
> a. Is not inconsistent with this act; *and*
>
> b. Is by its terms applicable to or available to all counties, or;
>
> c. Is applicable to all counties or to any category or class of counties, and deals with one or more of the following subjects: the administration of the judicial system, education, elections, health, county public authorities, taxation, and finance, and welfare.[2]

*N.J.S.A.* 40:41A–27 provides:

> Any county that has adopted a charter pursuant to this act may, subject to the provisions of such charter, general law and the State Constitution:
>
> a. Organize and regulate its internal affairs; create, alter and abolish offices, positions and employments and define the functions, powers and duties thereof; establish qualifications for persons holding offices, positions and employments; and provide for the manner of their appointment and removal and for their term, tenure and compensation.

In *Jordan v. Sidel*, 75 *N.J.Super.* 553 (Law Div.1962), aff'd 40 *N.J.* 244 (1963), the power described above to reorganize the county government was called the "Clean Slate Doctrine." In *Angelo v. Shapiro*, 168 *N.J.Super.* 459 (Law Div.1979), it was held that the statutory office of Treasurer of the County of Essex was terminated by adoption of the county executive plan and enactment of the code. Proof of the enhanced powers of the county executive after adoption of such a plan is *Shapiro v. Essex County Board of Chosen Freeholders*, 177 *N.J.Super.*

---

[2]*N.J.S.A.* 30:8–15 is not exempt from the operation of the appointment provisions of the county executive plan because it is not a "general law," as that is defined in *N.J.S.A.* 40:41A–26: first, because it is applicable only to counties of the first class, and second, because it does not deal with any of the subdivisions of subparagraph c.

87 (Law Div.1980), aff'd 183 *N.J.Super.* 24 (App.Div.1982), aff'd 91 *N.J.* 430 (1982), which held that the county executive had the authority to fix the salaries of county employees. It is significant that the courts ruled in that case that this power in the county executive arose by adoption of the county executive plan, citing *N.J.S.A.* 40:41A–31, as overriding the general statute, *N.J.S.A.* 40A:9–10, which had placed the salary fixing power in the board of chosen freeholders. 91 *N.J.* at 431–432. Similarly, adoption of the county executive plan changed the power of appointment of warden from the board of freeholders to the county executive.

 Although this finding agrees with plaintiff's contention that the county executive had the power to appoint Butler to office, it profits plaintiff little because, as indicated, in fact Butler was never appointed to a three-year term. Nor is tenable plaintiff's argument that Collier's long service with tenure under *N.J.S.A.* 30:8–15.2 altered the three-year sequence under *N.J.S.A.* 30:8–15. This did not change the term fixed by *N.J.S.A.* 30:8–15 for the reason stated by Judge, later Justice, Proctor, in *Monte v. Milat,* 17 *N.J.Super.* 260 (Law Div.1952):

> Since the term of an office is distinct from the tenure of an officer, 'the term of office' is not affected by the holding over of an incumbent beyond the expiration of the term for which he was appointed; and a holding over does not change the length of the term, but merely shortens the term of his successor, 67 *C.J.S.* 206, § 48(c). [at 268]

*Accord Sutkowski v. Jackson Tp.,* 184 *N.J.Super.* 198 (Law Div.1981), aff'd 184 *N.J.Super.* 97 (App.Div.1981); *see Janowski v. Garfield,* 134 *N.J.L.* 340 (1946); *see also Marvel v. Camden Cty.,* 137 *N.J.L.* 47 (E. & A. 1947); *Cabarle v. Pemberton Tp.,* 167 *N.J.Super.* 129 (Law Div.1979), aff'd o.b. 171 *N.J.Super.* 586 (App.Div.1980).

 Thus, the county executive did not have the power to appoint Butler to a three-year term by an appointment made in December 1984.

I deal now with the contention that Butler's First Amendment rights were violated. In *Branti v. Finkel, supra,* the

Court held that assistant public defenders could not be discharged for political reasons. It is not easy to capsulate the logic of the Court's opinion in that case [3], for in *Elrod v. Burns, supra,* which preceded it, the line of demarcation was between public employees "in non-policymaking, non-confidential posts and those engaged in more sensitive policymaking positions." 427 *U.S.* at 357, 96 S.Ct. at 2681. In *Branti,* Justice Stevens writing for the Court stated:

> In sum, the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved. [445 *U.S.* at 518, 100 *S.Ct.* at 1295 [4]]

*Branti* has not found favor with the New Jersey Supreme Court; see *Battaglia v. Union Cty. Welfare Bd.,* 88 *N.J.* 48, 67 (1981) and *Hudson Cty. Freeholder Bd. v. Clark,* 203 *N.J.Super.* 102 (App.Div.1985), certif. den. 102 *N.J.* 340 (1985). In *Cabarle, supra,* before *Branti, Elrod* was held not applicable to a municipal administrator. Nevertheless, if plaintiff is protected by the United States Constitution, it is the opinion of the United States Supreme Court which must control.

The questions raised by this constitutional issue requires consideration of plaintiff's position in the Essex County Table of Organization.

*N.J.S.A.* 40:41A-37, headed "Powers," reads:

> The county executive:
>
> a. Shall supervise, direct and control administrative departments;
>
> b. With the advice and consent of the board, shall appoint the county counsel, the administrator, the heads of all departments and any divisions created within such departments, and the members of all county boards, commissions and authorities;

---

[3]*See* Note, "Politics and the Non-civil Service Public Employee: A Categorical Approach to First–Amendment Protection," 85 Colum.L.Rev. 558 (1985).

[4]It was so construed in *Loughney v. Hickey,* 635 *F.*2d 1063, 1065 (3 Cir.1980)

c. May, at his discretion, remove or suspend any official in the unclassified service of the county over whose office the county executive has power of appointment in accordance with the provisions of section 87b [5];

. . . .

The code adopted by the county is consistent with the statutory authorization. Certain portions of it assist in the determination of this case. Section 4.5a, b and c repeats the language of *N.J.S.A.* 40:41A–37. The significant definitions contained in § 1.7 are:

h. 'Department' shall mean a primary organization unit or group of organization units of the County government;

i. 'Department Head' shall mean the administrative head of a department, and its subdivisions, regardless of his/her title;

j. 'Division' shall mean a sub-organization unit or group of organization units of a department of the County government established by or designated as a division by the Code;

k. 'Division Head' shall mean the administrative head of a division, regardless of his/her title;

. . . .

Article 14 contains the "Transitional Provisions." Number 11 is headed "Agencies Restructured Under New Code." The functions of "Jail" are assumed by "Public Safety." The table or organization of the county shows that included within the Department of Safety is the Division of Correctional Services, a subdivision of which is the county jail. Thus, while the warden of the county jail is not a department head or a division head, he is certainly not a subordinate employee. Since he is not a department or division head, his appointment vests in the county executive.

The office of Warden of the Essex County Jail is a position of great responsibility, entailing supervision over many

---

[5]Since the county executive had the power of removal of the warden, it would be incongruous indeed to hold that the appointment of a prior county executive for what is asserted to be a three-year term prevents a subsequent executive from removing him. *See Cabarle, supra.*

prisoners and prison officers, requiring exercise of judgment. It is patent that the county executive has reason to require that views of such an officer be compatible with his own political and fiscal philosophies.

In connection with the First Amendment contention, it is worth considering where plaintiff's argument leads. Certainly, it cannot be contended that the First Amendment confers life tenure upon plaintiff. If plaintiff's assertion that he was appointed in December 1984 for a three-year term is accepted, his term would expire December 1987, at latest, December 31, 1987. The county executive would then have the power of appointment, unless the legislative intent that the warden's term be limited to three years in the absence of reappointment is completely flouted. While a year in office is not trivial, it would certainly be detrimental to effective administration to have a warden who served for so short an additional period, almost certain to be replaced.

Legislative treatment of the office of warden (see *Hosp v. Martin*, 83 *N.J.L.* 299 (1912)) indicates that a warden is hardly in the category of the deputy public defenders considered in *Branti, supra.* The Legislature considered the office sufficiently important to enact specific statutes creating a term of office, fixing the manner of appointment and providing tenure for that office. While the manner of appointment to the office has been changed by the county executive plan, its importance has not been diminished. *N.J.S.A.* 40:41A–37c specifically empowered the county executive to remove officers such as a warden. Obviously, this was done to implement the predominant legislative intent in enacting the county executive option, that a county executive exercise executive and administrative powers, including hiring and firing, while the board of freeholders performed legislative functions. *N.J.S.A.* 40:41A–32. To rule that a county warden may hold office despite a change of administration would thwart clear legislative design. While, perhaps, this does not precisely conform to the quoted language from *Branti*, or even of *Elrod*, it does demonstrate a relation-

ship between the county executive and a warden, which removes the office of warden from the mandates of these two cases.

An appropriate order has been entered.